### In re MILAN STEEL FABRICATORS, INC., Debtor.

#### Bankruptcy No. B87–01540.

United States Bankruptcy Court, N.D. Ohio.

April 30, 1990.

Chris L. Hurlbut, Edward R. Brown, Arter & Hadden, Cleveland, Ohio, for debtor.

William J. Kopp, Asst. U.S. Atty., Cleveland, Ohio, for I.R.S.

## MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION TO AMENDED CLAIM OF THE INTERNAL REVENUE SERVICE

DAVID F. SNOW, Bankruptcy Judge.

This memorandum considers whether the amended claim of the Internal Revenue Service (the "IRS") should be allowed in this chapter 11 proceeding over the Debtor's objection. The IRS originally filed a proof of claim for $3,146.26 in July 1987. Two years later it filed an amended proof of claim for $17,948.95. The Debtor filed its objection to the amended proof of claim in January, 1990. In March 1990 the IRS filed a further amendment reducing its total claim to $15,494.35.

Prior to the final hearing on this matter on April 5, 1990, the parties had concluded that the bulk of the IRS' amended claim had been provided for in Debtor's plan through the allowance of state unemployment taxes. This left in dispute only a $1,564.70 priority penalty claim, a $22.99 priority interest claim and a $36.29 general unsecured interest claim relating to the Debtor's 1986 FUTA tax, and a $175.50 priority penalty claim, a $38.80 priority interest claim and a $10.98 general unsecured interest claim relating to the Debtor's 1987 highway use tax. Debtor objects generally that the amended claims are untimely since they were filed some 22 months after the bar date. Its specific objection to the FUTA penalty is that it exceeds the $60 penalty asserted in the original claim by 2600 percent. It also objects to the highway use taxes because no highway use tax claims were asserted in the original proof of claim. It articulated no objection other than tardiness to the 1986 FUTA interest claims. For the reasons noted below, I have allowed the amended interest claims in respect of the

FUTA tax and have sustained the Debtor's objections to the 1986 highway use tax claims as well as to the amended penalty claim in respect of the 1986 FUTA tax.

The parties filed several briefs in support of their positions. The IRS supplemental brief filed March 21, 1990 included the affidavit of Rosemary Selepena, a bankruptcy specialist with the IRS in the Cleveland District who was responsible for the IRS claims against the Debtor (the "Selepena Affidavit"). There appears to be no dispute under applicable tax law as to the validity of the taxes, penalties or interest reflected in the IRS amended proof of claim. The parties were content to submit the matter on the basis of their briefs, including the Selepena Affidavit. The facts found in this memorandum are based upon the Selepena Affidavit, the record in the case, the hearings before the Court and the pleadings and briefs submitted by the parties.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and General Order No. 84 entered in this District on July 16, 1984. This memorandum sets forth the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

### Background

Debtor filed its chapter 11 petition on May 4, 1987. The Court set September 14, 1987 as the bar date for asserting claims against the Debtor in the notice of the 341 creditors' meeting sent to all creditors including the IRS. The IRS filed its original proof of claim on July 14, 1987, some two months before the bar date. That proof asserted priority tax claims in the aggregate amount of $3,146.26, all but $16.68 of which related to Debtor's 1986 FUTA taxes. The claim for 1986 FUTA taxes and interest was prefaced by the words "Estimated Amount" under the heading "Date Tax Assessed". The $60 penalty shown in that proof of claim was set forth on a separate line without this preface.

According to the Selepena Affidavit the claim for 1986 FUTA taxes was estimated because the Debtor was tardy in filing its 1986 FUTA tax return. Apparently that return was due January 31, 1987 but was in fact filed on July 6, 1987, three days before the IRS original proof of claim was prepared but more than two months before the bar date. According to Ms. Selepena that return "was posted into the system on October 5, 1987, which was after the claims bar date" and "[p]enalties were subsequently claimed on the amended proofs of claim for failure to file in the amount of $1,020.45; failure to deposit in the amount of $453.54; and failure to pay up to the petition date in the amount of $90.71."

The IRS' amended proof of claim asserting these penalties was filed on July 24, 1989. That amendment for the first time asserted claims in respect of highway use taxes. The Debtor's 1986 highway use tax return, although due August 31, 1986, was in fact not filed until May 28, 1987 or about six weeks prior to the time the IRS filed its original proof of claim and about three and a half months before the bar date. According to Ms. Selepena the original proof of claim was prepared July 9, 1987, and at that point "[t]he claim for Highway Use tax was not included on the original Proof of Claim because it had not yet been posted into the system." She explains that "[n]ormally it takes up to four months from the time that a tax return is filed before it is posted into the computer system by the IRS Service Center." According to Ms. Selepena "[i]n this case, the liability was posted into the system on July 20, 1987, six days after the filing of the original Proof of Claim ..." but about two months before the bar date.

Debtor filed a proposed plan of reorganization and disclosure statement on September 12, 1989 and an amended disclosure statement on September 25, 1989. The disclosure statement was approved at a hearing held November 22, 1989 and was set for confirmation on January 25, 1990 pursuant to the Court's order entered December 13, 1989. Although the IRS initially objected to confirmation, its objection was withdrawn pursuant to the order of confirmation which reserved the parties' dispute

as to the FUTA penalty and the other open items for future disposition. Debtor's plan was confirmed at the hearing held on January 25, 1990.

### Analysis

The IRS has been a party to numerous cases in which its right to amend a proof of claim after the bar date has been challenged. The common theme of these cases, as of cases involving other creditors, has been an attempt to reconcile the constraint of bar dates imposed under the Bankruptcy Code and Bankruptcy Rules against a reluctance to disallow otherwise valid claims.

The threshold inquiry for most courts has been whether the amended proof states a brand new claim, in which case it is not allowable as an amendment, or whether the amended claim bears some relationship to the original claim sufficient to escape this disqualification. *See United States v. International Horizons, Inc. (In re International Horizons, Inc.),* 751 F.2d 1213 (11th Cir.1985); *Norris Grain Company v. United States (In re Norris Grain Company),* 81 B.R. 103 (Bankr.M.D.Fl.1987). But the cases are in apparent conflict as to what relationships qualify. In *In re Midwest Teleproductions Co., Inc.,* 69 B.R. 675 (Bankr.N.D.Ohio 1987), the case on which the IRS places its primary reliance, the court held the FUTA taxes claimed for the first time in the amendment were of the "same specific genre" as the FICA taxes asserted in the original claim since both were payroll taxes. 69 B.R. at 677. The IRS' standard proof of claim states that "the ground of liability is taxes due under the Internal Revenue laws of the United States."

■ In this case the amended FUTA penalty claim relates to the same 1986 tax and penalty as the penalty asserted in the original claim. Therefore it pretty clearly meets the same claim test despite its quantum leap in amount from $60 to $1,564.70. There is, on the other hand, no counterpart in the original proof to the highway use tax claims in the amended proof. The IRS has not suggested, nor do I discern, any connection, generic or otherwise, between highway use taxes and FUTA taxes other than the fact that "the ground of liability is taxes due under the Internal Revenue Laws of the United States."

Several cases have suggested that this connection may be sufficient for any tax claimed in the amendment to escape disallowance under the new tax-same tax dichotomy, *In re Emerald Green Corp.,* 2 BCD (CRR) 938, 9 CBC 780 (Bankr.E.D.N.Y. 1976); *see also Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953); but most cases have declined to be so liberal. *See In re International Horizons Inc., supra; In re Bondi's Valu–King, Inc.,* 102 B.R. 108 (Bankr. N.D.Ohio 1989); *In re Norris Grain Co., supra.* But the courts which appear to have embraced this attenuated standard have also involved other factors not present here. In *Emerald Green, supra,* the amendment was filed one day after the bar date. In *Menick v. Hoffman, supra,* the debtor, not the IRS, urged allowance of the amended tax claim to enhance its fresh start. In any event I am unaware of any case in this circuit which has allowed a new tax in an amended proof of claim to relate back to the original proof solely because it constituted "taxes due under the Internal Revenue Laws of the United States." "Standing alone, this is certainly insufficient to permit the free-wheeling, belated filing of tax claims under the guise of amendments." *In re Midwest Teleproductions Co., Inc., supra* at 677.

The requirement that creditors file proofs of claim within a limited time in bankruptcy cases is necessary if cases are to be administered effectively. *See In re Norris Grain Co., supra* at 106. Therefore the bankruptcy bar date expresses a broader and more immediate administrative need and public interest than do statutes of limitation generally. This need for finality is not consistent with allowing amendments to relate back to the original claim solely on the basis of so tenuous a connection.

The justification for relating amended claims back to the date of the original proof of claim derives its most specific support, both in language and by analogy, to Rule 15(c) of the Federal Rules of Civil

Procedure. That rule states that the amendment relates back if it arises out of the same "conduct, transaction, or occurrence." One commentator would relate back the claim in the amendment under Rule 15(c) if the original claim should have put the adverse party on notice of the existence of the amended claim. *See* 6 C. Wright & A. Miller, Federal Practice & Procedure, ¶ 1472 at 513 (2d ed. 1990). The record in this case suggests no such connection between the Debtor's FUTA tax and highway use tax. This is not to rule out the possibility that it might be fair and appropriate under some circumstances to relate back the claim for highway use tax to the original claim. *See, e.g., In re Norris Grain Co., supra* at 109 (late-filed claim for 1985 taxes was allowed because the IRS justifiably relied on the debtor's assertion that no tax would be due). But, as noted below, such circumstances do not exist in this case.

■ Moreover, the fact that the FUTA tax penalty asserted in the amended proof of claim arises out of the same tax and penalty asserted in the original claim does not assure its allowance. The Debtor urges disallowance on the ground that the 26–fold increase in that penalty effectively transformed the original penalty claim into a new claim that should result in its disallowance. Practically, in this case as in most, the new claim-same claim dichotomy only sets the stage for a broader equitable inquiry as to whether relation back is appropriate.

The cases accord the bankruptcy court broad discretion to decide whether circumstances warrant allowance of a post bar date amendment, *see, e.g., In re International Horizons, Inc., supra,* unless in exercising that discretion the court fails to take into account the appropriate criteria. *In re Miss Glamour Coat Co., Inc.,* 80–2

U.S. Tax Cas. (CCH) ¶ 9737, 46 A.F.T.R.2d (P–H) ¶ 6083 (S.D.N.Y.1980).

The cases, virtually without exception, endorse the propositions that the bankruptcy court as a court of equity should act to assure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done," *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), and that "in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re International Horizons, Inc., supra* at 1216; *see also Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Die Co.),* 164 F.2d 228, 230 (6th Cir.1947). But these principles prescribe a point of view, not specific decisional criteria.

Although in *In re Miss Glamour Coat, supra,* the District Court did prescribe five equitable inquiries [1] which it thought would generate the right answer in that case, and most amendment cases since have repeated them, these inquiries are only somewhat less general than the statements quoted above and the cases have turned on their particular facts. This has resulted in a lack of predictability that enables the parties in this case to rely upon recent bankruptcy cases from this district to support their conflicting contentions, *In re Midwest Teleproductions Co., Inc., supra,* in the case of the IRS; *In re Bondi's Valu–King, Inc., supra, In re Pyramid Building Co.,* 87 B.R. 38 (Bankr.N.D.Ohio 1988), and *In re The Overly–Hautz Co.,* 57 B.R. 932 (Bankr.N.D.Ohio 1986), *aff'd,* 81 B.R. 434 (Bankr.N.D.Ohio 1987), in the case of the Debtor.

The IRS finds *Midwest Teleproductions* particularly persuasive because of the supposed similarity of its facts. However, the

1. The questions suggested in *Miss Glamour Coat* were:
   1. Did the debtor and creditors rely on the earlier proof of claim or have reason to know that subsequent proofs of claim would be filed?
   2. Will other creditors receive a windfall if the amendment is disallowed?
   3. Did the IRS intentionally or negligently delay in filing its proof of claim?
   4. Was the IRS justified in failing to request an extension of the bar date?
   5. Does equity require the consideration of other factors?

only similarity I perceive is that the debtors in both cases were late in filing their tax returns. In *Midwest Teleproductions* the IRS delayed filing its amended claim for about five months after the bar date. In this case, by contrast, the amended claim was not filed until about two years after the IRS filed its original claim and about 22 months after the bar date. Although there is no one-to-one correlation between the period of the delay in filing the amendment and its allowance, the longer the delay the less likely it is that the IRS will prevail. *See In re Butcher*, 74 B.R. 211 (Bankr.E.D.Tenn.1987) (22 months after bar date); *In re Bondi's Valu–King, Inc., supra*, (three years); *In re Pyramid Building Co., supra* (22 months after the return was filed—25 months after the bar date). Those cases allowing the amendment have usually involved shorter periods. *In re Emerald Green, supra* (one day); *Menick v. Hoffman, supra* (six months).

In *Midwest Teleproductions* the court noted that the debtor had not filed a disclosure statement nor was there any indication that allowance of the amended claim would adversely affect the debtor or the reorganization. It is not clear from the record in this case when the Debtor first learned of the IRS amended proof of claim. But the IRS does not dispute Debtor's contention that Debtor's plan was structured without taking the amended claim into account. Rather, it ridicules the idea that allowing the claim will materially affect Debtor and notes that the Debtor will spend more contesting the claim than it would in paying it. But this argument surely cuts both ways. If the amount involved is too small to materially impact the Debtor or its creditors or the reorganization plan, it is also too small to materially impact the IRS. The IRS does not dispute Debtor's assertion that it did not consider these claims in structuring its plan nor that to the extent they would have any impact at all it would be adverse to the Debtor and other constituencies. Having decided to fight this case as a matter of principle, it is disingenuous for the IRS to try to bolster its case by arguing that only trivial sums are involved. The point is that this case

was considerably further along in its development than *Midwest Teleproductions* when the amendment issue arose.

Another important difference between this case and *Midwest Teleproductions* is that in *Midwest Teleproductions* the IRS had issued to the debtor notices of deficiency in respect of the claims later included in the amended proofs of claim. Therefore it appeared that the debtor both knew of the additional claims prior to the bar date and that the IRS would in fact assert them. The record in this case is devoid of any evidence that the IRS made any comparable effort to assert its penalty claim or that the Debtor knew, or was on notice, that the penalty claim might be increased 26–fold.

The IRS attempts to bridge this gap by suggesting that the taxpayer should have known that the IRS claim would ultimately be restated to reflect the real facts. The IRS offers no proof for this contention beyond the argument that the Debtor knew that its filing was late, that penalties and interest would be incurred and that 1986 taxes had been asserted on an estimated basis. But whatever expectations this might have generated would have vanished in the ensuing two years before the IRS amendment was filed. Since there is nothing else in this record to suggest that the Debtor in fact knew that additional claims would be forthcoming, this contention amounts to an argument charging chapter 11 debtors generally with constructive notice of whatever the full amount of the IRS claims ultimately turn out to be. I find no support in the cases for this argument. In the amendment context most courts have required not only that the debtor know of the IRS' claims but, through unambiguous assertions by the IRS, know of its intent to assert those claims. *See International Horizons, Inc., supra* at 1217.

Therefore, the principal thrust of the IRS' argument and of its appeal to *Midwest Teleproductions* is that the Debtor is responsible for the IRS delay because the Debtor was late in filing its tax returns. On its face this is a poor excuse. Despite the Debtor's delay the IRS had all the information it needed to file accurate

claims at least two months before the bar date. Moreover, as the IRS should be well aware, it is predictable that the financial and business stress preceding a bankruptcy filing may disrupt or delay a debtor's normal activities, including the filing tax returns.

The Selepena Affidavit, however, at least explains the IRS' failure to file an accurate claim within the bar date. It appears that the IRS requires about four months to translate the information in a tax return into an accurate proof of claim. Nevertheless, most courts have explicitly refused to grant the IRS any special indulgence because of such limitations. *E.g., In re International Horizons Inc., supra; In re Bondi's Valu–King, supra; In re Norris Grain Co., supra.* Even in *Midwest Teleproductions* the court required more than the Debtor's delay in filing its returns to allow the amendment. Another case from this District refused to excuse the IRS' delay even where the returns were filed after the bar date. *In re Pyramid Building Co., supra.*

But assuming that I were disposed to make allowance for the delays inherent in the IRS system, I am not inclined to accept its rationale for its failure to request an extension of the bar date pursuant to Bankruptcy Rule 3003(c)(3) or to file its amended claim considerably earlier than was done in this case. The IRS' sole excuse for these failures is that the "IRS simply does not have the capability to continuously file amended returns every time that new information becomes available. The taxpayers of this county are not willing to fund such a capability nor should they be required to." IRS Supplemental Brief at pages 4 and 5. This Court has neither the power nor inclination to accede to this rationale for disregarding the requirements of the Bankruptcy Code and Bankruptcy Rules. In *Midwest Teleproductions* the court advised the IRS that the court's decision should not be construed as "a license to sleep on its rights." 69 B.R. at 678. In this case the IRS apparently claims a license to disregard its obligations under the bankruptcy law.

The IRS' suggestion that the Debtor should have avoided this delay by filing a proof of claim for the IRS under Bankruptcy Rule 3004 is particularly unpersuasive. That rule permits a debtor to file a claim where the creditor fails to do so in order, where necessary, to subject the creditor's claim to the bankruptcy proceeding. *See United States v. Vlavianos (In re Vlavianos),* 71 B.R. 789 (Bankr.W.D.Va.1986). Since in this case the IRS had filed a proof of claim, it does not appear that the Debtor would have the right to file a proof of claim. Certainly it had no obligation to do so.

Finally the fact that the predominant claim in this case is for a priority penalty needs to be mentioned. The Debtor urges subordination of the penalty claim on the authority of *In re Mansfield Tire & Rubber Co.,* 80 B.R. 395 (Bankr.N.D.Ohio 1987). Although that case involved a liquidating chapter 11 and is clearly distinguishable, the fact that a penalty is involved does not strengthen the IRS' case. It appears from the record that the penalty is not intended to reimburse the IRS for pecuniary loss but to punish the Debtor's prepetition conduct. I see no reason to disregard the bar date in order to permit the IRS to penalize the Debtor's prepetition delay when the IRS has itself been guilty of a longer delay in filing its claims. The Debtor was on the verge of bankruptcy. The IRS has no such excuse.

■ By contrast, there is greater appeal in allowing the IRS claims for interest on the FUTA tax since these claims reflect an actual loss of use of taxes that should have been paid to the IRS. But more to the point, these interest claims are so small that neither party chose to consider them separately. Their addition constitutes the sort of minor adjustment to reflect clerical or similar mistakes that can be expected to be part of a final adjustment at the time of ultimate allowance.

In summary, the rules that have evolved in the cases permitting amendments to proofs of claims to relate back to the original claim have attempted to strike an equitable balance between the administrative

need for finality and allowing valid claims to share in distribution where there has been substantial compliance with the applicable bar date. In this case allowing the IRS amended proof of claim, except as to interest on the FUTA tax, would only condone the IRS' intentional noncompliance with bankruptcy law and undermine the need for finality without any countervailing equitable justification.

The Court's order in conformity with this opinion is attached.

## JUDGMENT

A Memorandum of Decision on Debtor's Objection to Amended Claim of the Internal Revenue Service having been rendered on April 30, 1990,

IT IS ORDERED, ADJUDGED and DE-CREED that the Debtor's objection to the amended claim of the Internal Revenue Service ("IRS") (the "Objection") is sustained in part and overruled in part.

1. The Objection be, and it hereby is, sustained insofar as it relates to the IRS's amended claim as to the 1986 highway use tax and interest and penalties related thereto.

2. The Objection be, and it hereby is, sustained insofar as it relates to the IRS's amended penalty claim in respect of the 1986 FUTA tax and the IRS's claim related thereto is disallowed to the extent that it exceeds $60.00.

3. The Objection be, and it hereby is, overruled insofar as it relates to the IRS's amended claim for interest in respect of the 1986 FUTA tax and the IRS's priority claim in the amount of $92.57 and general unsecured claim in the amount of $36.29 are hereby allowed.