### In re FIRST TRUCK LINES, INC., Debtor.

### Bankruptcy No. 3–86–00925.

United States Bankruptcy Court, S.D. Ohio, W.D.

June 25, 1992.

Thomas R. Noland, Dayton, Ohio, for trustee.

Pamela M. Stanek, Asst. U.S. Atty., Dayton, Ohio, Leslie M. Singer, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.

Peter J. Donahue, Dayton, Ohio, for debtor.

## DECISION ON ORDER ON OBJECTION

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)—allowance or disallowance of claims against the estate and estimation of claims.

Presently before the court is an objection filed by the trustee to the tax claims filed by the Internal Revenue Service (Doc. 193). A hearing on this objection was held and this proceeding was taken under advisement.

## BACKGROUND

The parties filed a Stipulation Of The Trustee And the United States Of America Relating To Allowance Or Disallowance Of Claims Of the Internal Revenue Service (Doc.216). The relevant stipulations are as follows:

1) The parties agree that this court has jurisdiction to determine the claims and requests of the Internal Revenue Service (the "IRS").

2) On April 10, 1986, the debtor voluntarily filed for relief under chapter 11 of the Bankruptcy Code.

3) The debtor moved to convert the case to chapter 7 in June, 1988. An order converting this case to chapter 7 was entered on August 1, 1988.

4) The bar date for filing claims in the chapter 7 proceeding was December 1, 1988.

5) On November 22, 1988, the IRS filed a Request for Payment of Administrative Expenses which was numbered 102 by the clerk ("Claim 102"). The amounts listed in Claim 102 involve claims which accrued postpetition and preconversion for taxes, interest, and penalties. Claim 102 did not include any claims made in previous claims or requests filed by the IRS in this case.

6) On April 20, 1989, the IRS filed a Request for Payment of Administrative Expenses which was numbered 107 by the clerk ("Claim 107").

7) On August 7, 1991, the trustee filed an objection to Claim 102 and Claim 107.

8) In response to this objection, the United States filed the United States' Opposition To Trustee's Objection To Allowance Of Claims Of Internal Revenue Service (Doc. 196) and a Memorandum Of Law In Support Of The United States' Opposition To Trustee's Objection To Allowance Of Claims Of Internal Revenue Service (Doc. 210). The Trustee filed a Response Of Trustee To Memorandum Of USA In Opposition To Objection To Claim (Doc. 198) and a Memorandum Of Trustee Relative To Memorandum Of Law In Support Filed By USA For Allowance Of Claims Of The Internal Revenue Service (Doc. 211).

9) The parties agree that the tax and interest amounts in Claim 102 will be allowed as an administrative expense claim with priority under Sections 503(b), 507(a)(1), and 726(a)(1). However, the parties request that the court determine the priority, if any, of the penalties related to Claim 102.

10) The parties agree that the tax and interest claims made in Claim 107 involving quarters ending December 31, 1986 (WT–FICA) for $964.80 and December 31, 1987 (WT–FICA) for $74,670.39 are claims not raised in previous claims and should be subordinated pursuant to Section 726(a)(3). However, the parties request that the court determine the priority, if any, of the penalties related to Claim 107.

11) The parties agree that, with respect to Claim 107, the quarters ending September 30, 1986 (WT–FICA) for $264.51, September 30, 1987 (WT–FICA) for $28,039.08,

March 31, 1988 (WT–FICA) for $24,363.81, June 30, 1988 (WT–FICA) for $29,718.50, the FUTA tax for the year 1987 for $3,709.46, and the corporate income tax for the year 1987 for $300.00 are the same amounts sought in previous claims timely filed in these proceedings.

12) The parties agree that, with respect to Claim 107, the amount claimed for FUTA tax for the year 1988 was greater in amount than the amount claimed in Claim 102 for the same year and that Claim 102 delineated the 1988 year as being estimated. The United States maintains that the increased amount for FUTA tax should be allowed as an administrative expense, but the trustee maintains that the increased amount for FUTA tax should not be allowed. The parties agree that, if Claim 107 is allowed as an amended claim, the court should determine the priority, if any, of the penalties included in Claim 107.

### ISSUES

Based upon the parties' stipulations, this court finds that the following issues are before this court for determination:

1) With respect to Claim 102, what priority will the tax penalties be accorded.

2) With respect to Claim 107, will a) the FUTA tax be allowed as an amendment to Claim 102 and allowed as an administrative expense, b) the penalty related to this FUTA tax be allowed as an amendment to Claim 102, and if so, what priority will it be accorded, and c) the penalties related to FICA claims, which have not been previously asserted, be allowed, and if so, what priority will these penalties be accorded.

### DISCUSSION

The resolution of the interrelated issues of federal tax priorities, penalties, and subordination requires an examination of the interstices of several seemingly contradictory provisions of the Code (11 U.S.C. § 348, § 503, § 507, § 510, and § 726). The subject of an "appropriate analytical task" and an "agreed upon methodology" in statutory interpretation of the Bankruptcy Code has been continually emphasized in recent Supreme Court decisions. *Patter-*

*son v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). This methodology may be described by acknowledging that, although "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation," *Connecticut Nat'l Bank v. Germain,* —— U.S. ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992), the initial examination commences with the language of the statute. *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("the fundamental canon [of] statutory interpretation begins with the language of the statute itself."). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Germain,* 112 S.Ct. at 1149. If the statutory language is ambiguous a court must resort to examination of legislative history. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As the Supreme Court stated in *Ron Pair,* "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" 109 S.Ct. at 1031. "In such cases, the intention of the drafters, rather than the strict language, controls." 109 S.Ct. at 1031. Further, it is necessary to note that a court should be reluctant to "accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

### I. Claim 102

The parties request that this court determine the priority to be accorded the postpetition, preconversion non-pecuniary loss tax penalties asserted in this claim. The IRS asserts that postpetition, preconversion tax penalties are administrative expenses entitled to the priority accorded by

11 U.S.C. § 507(a)(1). Section 507(a)(1) provides:

> (a) The following expenses and claims have priority in the following order:

> (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

The administrative expenses allowed under § 503(b) include the taxes incurred by a bankruptcy estate. Section 503(b)(1) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

> (B) any tax—

> (i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

> (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

> (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph[.]

The parties have agreed that the tax and interest sought in Claim 102 will be allowed as an administrative expense under § 503(b). Because of the Code's express reference to taxes in § 503(b)(1)(B), this court determines that the parties have stipulated that the taxes will be allowed under this subsection.

As § 503(b)(1)(C) demonstrates, the penalties related to taxes which come within the provisions of § 503(b)(1)(B) are administrative expenses. Therefore, having been expressly defined as administrative expenses, the postpetition tax penalties receive first priority under § 507(a)(1).

The trustee contends, however, that these tax penalties should be subordinated. Initially, the trustee asserts that, as a result of the conversion of this case from a case under chapter 11 to a case under chapter 7, the provisions pertaining to distribution in liquidation cases, specifically § 726(a)(4), dictate the priority of the tax penalties. Section 726(a)(4) provides:

> (a) Except as provided in section 510 of this title, property of the estate shall be distributed—

> (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]

At first blush it appears that there is a conflict between § 503(b)(1)(C) and § 726(a)(4), since both sections contain the same term "penalty" but do not accord it the same priority. Resolution of this conflict is found in the provisions of 11 U.S.C. § 348(d). Section 348(d), pertaining to conversion, provides:

> (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, *other than a claim specified in section 503(b) of this title*, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

(Emphasis supplied).

Section 348(d), by expressly omitting claims under § 503(b), prevents chapter 11 administrative claims from becoming prepetition claims upon conversion. *United States v. Ginley (In re Johnson)*, 901 F.2d 513, 520 (6th Cir.1990); *In re Bondi's Valu–King, Inc.*, 102 B.R. 108, 111 (Bankr. N.D. Ohio 1989), *aff'd*, 126 B.R. 47 (N.D. Ohio 1991); 2 *Collier On Bankruptcy* para. 348.05 at 348–10 (15th ed. 1991). Accordingly, the express statutory language

indicates that these penalties retain their status as administrative claims under § 503(b)(1)(C) and are to be paid in accordance with the distribution provisions set forth in § 726(a)(1)[1] and § 726(b),[2] and not the provisions contained in § 726(a)(4).

■ The trustee alternatively argues that the postpetition tax penalties sought by the IRS in Claim 102 should be equitably subordinated under 11 U.S.C. § 510(c)(1). Section 510(c)(1) provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]

The Bankruptcy Code does not expressly define the phrase "equitable subordination," therefore, it is necessary to resort to an examination of the legislative history of the Code.[3] Legislative history indicates that the meaning of the phrase "equitable subordination" was to be developed by the courts. The Congressional Record states:

> It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if holder of such claim is guilty of inequitable conduct, *or the claim itself is of a status susceptible to subordination, such as a penalty* or a claim for damages arising from the purchase or sale of a security of the debtor.

124 Cong.Rec. H11089, H11095 (1978) (emphasis added) (remarks of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6436, 6452; *see also* 124 Cong.Rec. S17406, S17412 (1978) (remarks of Sen. DeConcini), *reprinted in* 1978 U.S.Code Cong. & Admin. News 6505, 6521. *See also United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 942 F.2d 1055, 1062 (6th Cir.1991) ("We continue to recognize that equitable subordination in bankruptcy may be appropriate if the claimholder is guilty of inequitable conduct or if the claim itself is of a status susceptible to subordination.").

Section 510(c)(1) has been utilized to subordinate claims for non-pecuniary tax penalties. *Burden v. United States*, 917 F.2d 115 (3d Cir.1990); *Schultz Broadway Inn v. United States*, 912 F.2d 230 (8th Cir. 1990); *In re Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990); *In re Manchester Lakes Assocs.*, 117 B.R. 221, 225 (Bankr.E.D.Va.1990); *In re Merwede*, 84 B.R. 11, 14 (Bankr.D.Conn.1988). These claims have been subordinated despite the absence of creditor misconduct. *Burden*, 917 F.2d at 120; *Schultz Broadway Inn*, 912 F.2d at 233; *Virtual Network Services*, 902 F.2d at 1250; *In re Merwede*, 84 B.R. at 14. The determination of whether a penalty should be subordinated requires the court to weigh the equities of the various claims on a case-by-case basis. *Burden*, 917 F.2d at 120; *Schultz Broadway Inn*, 912 F.2d at 234; *Virtual Network Services*, 902 F.2d at 1250. Otherwise, subordination would automatically occur merely because a claim is a penalty, and a major revision in the bankruptcy law such

---

**1.** (a) Except as provided in section 510 of this title, property of the estate shall be distributed—
    (1) First, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title[.]

**2.** (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208 or 1307 of this title, a claim allowed under

section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

**3.** As the Third Circuit noted in *Burden*, "[p]rior to the enactment of the Bankruptcy Act of 1978, subordination of tax penalty claims did not occur because noncompensatory penalty claims owed to the government were specifically disallowed." 917 F.2d at 117 (citations omitted).

as this would warrant explicit direction from Congress. *Burden*, 917 F.2d at 119.

The IRS acknowledges that courts have subordinated tax penalties under § 510(c)(1) but contends that these decisions are not applicable to this proceeding because they involve prepetition tax penalties, and not postpetition tax penalties. In support of its contention the IRS distinguishes the penalties sought in this proceeding from those in *Virtual Network Services.*

In *Virtual Network Services*, the Seventh Circuit addressed the issue of whether prepetition non-pecuniary loss tax penalties could be equitably subordinated under § 510(c)(1). 902 F.2d at 1247–50. In examining the equities of the case before it, the appeals court concluded that non-pecuniary loss tax penalties could be subordinated under 11 U.S.C. § 510(c)(1). In reaching this determination, the appeals court examined the IRS's challenges to the district court's holding that equitable subordination would be applied to the case "because 1) the goal of equitable subordination focuses not on the conduct of the creditor but on fairness to creditors in a particular case, 2) punishing or deterring VNS's [the debtor's] innocent creditors because of VNS's wrongful conduct serves no purpose, and 3) the IRS's claims in this case are punitive in nature." *Virtual Network Services*, 902 F.2d at 1250. Specifically, the IRS challenged the district court's holdings on grounds 2 and 3.

With respect to the district court's holding in ground 2, the IRS asserted, on appeal, that it was just as innocent as the debtor's general unsecured creditors, thus it was unfair to punish it in relation to those other creditors. In addressing this contention, the appeals court noted that the IRS had been found innocent by the district court, but that the district court also emphasized "that it [the IRS] had waited too long to collect its debt, therefore, making it unfair for the court to shift the burden of the debt to other innocent creditors." *Virtual Network Services*, 902 F.2d at 1250. With respect to its objection to ground number 3, the appeals court stated that the

IRS was challenging the district court's findings that the tax penalty claims were punitive by attempting to recharacterize the nature of its claims as being unlike other non-pecuniary loss penalties because they are designed to not only punish the debtor, but to protect " 'the integrity of tax systems and to reimburse the Government for ... costs incurred as a result of certain taxpayer misconduct.' " *Virtual Network Services*, 902 F.2d at 1250. In addressing this contention, the appeals court noted that this argument had not been properly raised to the district court by the IRS; but, nonetheless, stated, "this vague assertion is an attempt to diffuse the purpose behind the tax penalties, *i.e.,* to punish those who fail to abide by the taxing structure, and to deter those who might be inclined to avoid tax payment." *Id.* The court concluded, "allowing the IRS to recover its non-pecuniary loss claims along with others who have actually 'invested' in VNS [the debtor] and lost would be unfair on these facts." *Id.* The appeals court further stated:

As for the other grounds that the district court relied on in applying equitable subordination to the IRS's claims, we are persuaded that the district court accurately addressed the equities of this case. The district court correctly considered that it was unfair to allow the IRS's tax penalty claims to come out of the "pockets" of other general unsecured creditors who had not been paid their pecuniary losses. Moreover, in this case the debtor has sold most of its operating assets and filed an amended plan for liquidation. In other words, VNS [the debtor] exists in name only, as an entity out of which remaining funds are distributed, in this case between 15–30% of that due, to its creditors. We agree that the equities in this case favor the subordination of the IRS's claims to those of the other general unsecured creditors.

902 F.2d at 1250.

Similarly, the Eighth Circuit, in *Schultz Broadway Inn*, concluded that the IRS's tax penalty claims would be subordinated under § 510(c)(1). 912 F.2d at 234. Notably, in *Schultz Broadway Inn*, the Government argued that subordination of non-pe-

cuniary loss penalties is precluded under chapter 11 because Congress, as evidenced by its express subordination of non-pecuniary loss penalty claims in § 726(a)(4), intended to restrict subordination of punitive claims to proceedings under chapter 7. 912 F.2d at 233. The *Schultz Broadway Inn* court rejected the Government's argument and stated:

> [I]n proceedings under chapter 7, Congress could be certain that in most cases the debtor would cease operations with assets that were insufficient to cover the creditors' claims in full. Therefore, in the chapter 7 context, a uniform rule subordinating penalty claims recognizes that ordinary creditors should receive protection from debtors' punitive obligations.
>
> The same rule, however, would be inappropriate for proceedings under chapter 11. In chapter 11 proceedings, Congress expected that many debtors would continue their operations under a reorganization plan and ultimately return to a viable and profitable economic state. In such cases, the debtor, quite rightly, should bear the burden of its full punitive obligations. Where a chapter 11 debtor opted to liquidate, however, the consequences to creditors could be very similar to a proceeding under chapter 7.

912 F.2d at 233 (citation omitted). The *Schultz Broadway Inn* court concluded that, in accordance with the "legislative history of the Bankruptcy Reform Act, which generally prefers claims for actual losses over purely punitive claims," the "general unsecured creditors who suffered actual losses should receive preference over the Government's claim for a non-pecuniary loss tax penalty in this liquidating chapter 11." 912 F.2d at 234. However, the court noted that, despite the preference for compensating creditors' actual losses first, appropriate circumstances may exist such that the Government's non-pecuniary loss claims will not be subordinated, but the "Government bears the burden of directly bringing such equitable considerations to the bankruptcy court's attention." *Id.*

█ As previously stated, in determining whether to subordinate a claim under § 510(c)(1), the various equities of the claims must be considered. The nature of the claim as arising prepetition or postpetition is only one of several factors to weigh when balancing the equities in a proceeding. In attempting to balance the equities in its favor, the IRS has made several assertions. First, the IRS asserts that it has not waited too long to collect the debt owed it when the debtor has been in bankruptcy. This court agrees. In this proceeding, unlike in *Virtual Network Services,* the IRS has not waited too long to collect its debt. Second, the IRS asserts that requiring debtors to pay penalties which are administrative expenses does not punish innocent creditors, but rather insures that chapter 11 debtors obey the law while they are under the protection of the bankruptcy court. This assertion, similar to that made by the IRS in *Virtual Network Services,* is unpersuasive in this liquidation proceeding. Penalties may punish a debtor who is attempting to reorganize and may insure that the debtor obeys the tax laws; however, in a Chapter 7 liquidation or in a liquidating chapter 11, the parties who are punished are other creditors because payment of penalties reduces estate assets available for distribution. Third, the IRS asserts that, although the Bankruptcy Code provides for the readjustment of prepetition debts, the Code requires that administrative expenses are not to be readjusted but are to be paid in full. The IRS's assertion is correct but not complete since it ignores the equitable principles contained in § 510(c)(1). Under principles of equity, particularly when such principles are expressly contained in statutory enactments, the rigidity of otherwise applicable law is modified to comply more appropriately with legislative intention. Lastly, the IRS asserts that it would be inequitable to allow the debtor to subordinate a liability incurred by the debtor while under the protection of the bankruptcy court. Although "[t]he inclusion of penalties on postpetition taxes in section 503(b) indicates that Congress was willing to have the bankruptcy estate pay for expenses that arise out of

the failure of the debtor in possession or the trustee to pay taxes in a timely manner," *United States v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.),* 916 F.2d 363, 366 (6th Cir.1990), again, the provisions of § 510(c)(1) incorporate the principle of equitable subordination and, accordingly, the court must consider the equities of all claims, not just the priority of the claims of the IRS.

Weighing the foregoing against the Code's preference for compensating actual loss claims, and the fact that, in this liquidation proceeding, it appears the total amount of assets to be distributed will fully compensate only the first priority claim holders and will be distributed on a *pro rata* basis to the second priority claim holders, the court concludes that the equities tilt in favor of subordinating the postpetition non-pecuniary loss tax penalties sought by the IRS. *See Walker v. Ferguson (In re Import & Mini Car Parts, Ltd., Inc.),* 136 B.R. 178, 182 (Bankr.N.D.Ind. 1991) (court analyzed the decisions in *Virtual Network, Burden,* and *Schultz Broadway Inn* and concluded that, as a result of the equities existing in the proceeding, the postpetition tax penalties would be subordinated) [4]; *In re F.A. Potts & Co., Inc.,* 114 B.R. 92, 94 (Bankr.E.D.Pa. 1990) (postpetition tax penalties assessed against debtor were subordinated under § 510(c)(1)).

## II. Claim 107

■ This court must determine whether Claim 107, filed after the bar date, may be allowed as an amendment. Specifically, this court must determine whether the FUTA tax listed in Claim 107 may be allowed as an amendment to the FUTA tax listed in Claim 102 and as an administrative expense. Additionally, this court must determine the priority of the penalty related to the additional FUTA tax and the priority, if any, of the penalties related to the FICA claims not previously listed in any timely filed claim.

The determination of whether to permit an amendment to a timely filed proof of claim rests within the discretion of the court. *In re Wilson,* 136 B.R. 719, 721 (Bankr.S.D.Ohio 1991); *In re Parsons,* 135 B.R. 283, 284 (Bankr.S.D.Ohio 1991); *In re McLean Indus., Inc.,* 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990); *In re Milan Steel Fabricators, Inc.,* 113 B.R. 364, 368 (Bankr.N.D.Ohio 1990). In making this determination courts have developed a two-part test. *Parsons,* 135 B.R. at 284; *McLean,* 121 B.R. at 708; *Bishop v. United States (In re Leonard),* 112 B.R. 67, 71 (Bankr.D.Conn.1990).

■ Under the first prong of the test, the court must determine whether the amendment reasonably relates to a timely filed claim or whether it is merely an attempt to file a new claim. *United States v. Simon (In re Bondi's Valu–King, Inc.),* 126 B.R. 47, 49 (N.D.Ohio 1991); *Wilson,* 136 B.R. at 721; *McLean,* 121 B.R. at 708; *Milan Steel Fabricators,* 113 B.R. at 367. "[A]mendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Milan Steel Fabricators,* 113 B.R. at 368 (quoting *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.),* 751 F.2d 1213, 1216 (11th Cir.1985)). Examples of amendments permitted include a correction in "the amount of tax, penalties or interest claimed in a timely filed claim." *In re Unroe,* 937 F.2d 346, 349 (7th Cir.1991). However, if the claim is a new claim, it will be disallowed. *Milan Steel Fabricators,* 113 B.R. at 367.

■ Under the second prong, the court must perform an equitable analysis. *McLean,* 121 B.R. at 708; *In re Leonard,* 112 B.R. at 71. In *McLean,* the court set forth indicia to consider when balancing the equities, including:

1) whether there is undue prejudice to an opposing party,

---

**4.** However, unlike the courts in *Virtual Network Services* and *Schultz Broadway Inn,* the bankruptcy court, as the trustee requested, subordi-nated the tax penalties to the other unpaid chapter 11 administrative expenses. *Id.*

2) whether there is bad faith or dilatory behavior on the part of the claimant,

3) whether other creditors would receive a windfall were the amendment not allowed,

4) whether other claimants might be harmed or prejudiced,

5) whether there is justification for the inability to file the amended claim at the time the original claim was filed.

121 B.R. at 708. *See also Parsons,* 135 B.R. at 285.

It is undisputed that Claim 102, the original claim, was timely filed. Claim 102 sets forth the FUTA tax owed by the debtor for two tax periods, December 31, 1987 and December 31, 1988, and states at the bottom of the claim: "Estimated tax claims have been filed because the debtor has failed to file the return(s) for the estimated periods. As soon as the debtor files the return(s) with the I.R.S. as required by law, this claim will be adjusted as necessary." The parties have agreed that the FUTA tax claims in Claim 102 will be allowed as administrative claims.

It is undisputed that the FUTA tax for the tax period December, 1987 listed in Claim 107 is identical to that in Claim 102, therefore, it is only the FUTA tax sought for the tax period December, 1988 which the IRS seeks to amend. The FUTA tax listed in Claim 107, the amended claim, is for an identical tax period as the FUTA tax listed in Claim 102. The only difference between the FUTA tax claims is the amount. Further, the FUTA tax in Claim 107, listed as an administrative claim, does not attempt to change the character or nature of the claim. Thus, the claim for the additional FUTA tax in Claim 107 relates to the timely filed claim sought in Claim 102 and is not a new claim. For identical reasons, this court finds that the penalty related to the FUTA tax in Claim 107 relates to Claim 102, the timely filed claim. Accordingly, with respect to the FUTA tax and the penalty related to this

FUTA tax, the first prong of the test has been satisfied.

■ With respect to the penalties which relate to FICA claims not previously listed in a timely filed claim, this court finds that these penalties do not relate to any timely filed claim. Thus, they fail to satisfy the first prong of the test utilized in determining whether to allow an amendment to a timely filed claim. Accordingly, they will be disallowed.

■ Having met the first prong of the test, unless equitable considerations militate strongly against this amendment, the FUTA tax will be allowed. *McLean,* 121 B.R. at 709. The trustee asserts that, if this claim is allowed, creditors in the same class will be prejudiced because it will "reduce their dividend." (Doc. 211 at 7). In light of the policy favoring liberal amendment, see *McLean,* 121 B.R. at 710, this type of prejudice by itself, in this proceeding, is insufficient. This court finds that there is no undue prejudice to the trustee or any other claimant.

Moreover, there is justification for the failure to file a timely claim.[5] The IRS stated that Claim 102 was an estimated claim. The IRS has justified the need for the statement that the tax amounts were just an estimate because "the bar date fell before the debtor's 1988 tax return was due," and no evidence in the record exists to dispute this assertion. (Doc. 210 at 7). Although such a statement, standing alone, might not provide justification for an untimely claim, it does provide the trustee and claimants with notice that the amounts contained in the IRS's initial claim may not be accurate and may be subsequently amended.

The trustee asserts that the proposed amended claim should not be allowed because it does not state on its face that it is an "amendment." As the very party that has strenuously argued, and has thereafter benefited from the application of equitable principles on the subordination issue, it is

---

**5.** This court recognizes that the IRS's amended claim was not filed until approximately 5 months following the bar date.

not particularly persuasive for the trustee to attempt to prevent the application of equitable principles on the amendment issue. This court finds that Claim 107, the amended claim, though not specifically designated an "amendment," substantively constitutes an amendment and is thus determined to be an amended claim. *See In re Pyramid Building Co.*, 87 B.R. 38, 40 (Bankr.N.D. Ohio 1988). "A contrary result would clearly elevate form over substance and violate equitable considerations controlling amendments." *Id.*

■ Further, with respect to the penalty related to the FUTA tax, this court finds no equitable considerations militating against its allowance; however, in accordance with this court's previous discussion of equitable subordination (§ 510(c)(1)), this court subordinates this penalty to that of the general unsecured creditors.

Accordingly, this court, having initially examined the plain meaning of the applicable Code provisions, and, where appropriate, having consulted legislative history and having found no evidence of congressional intention to break with the pre-Code practice of preferring the payment of actual losses prior to the payment of penalties, and having determined that this result is not at odds with the intention of Congress, the court concludes:

1) With respect to Claim 102:

a) the penalties are equitably subordinated to that of the general unsecured creditors,

2) With respect to Claim 107:

a) the FUTA tax is allowed as an amendment to the FUTA tax in Claim 102 and is allowed as an administrative expense,

b) the penalty related to this FUTA tax is allowed; however, this penalty is equitably subordinated to that of the general unsecured creditors, and

c) the penalties which relate to the FICA claims not previously listed in a timely filed claim do not amend claims in Claim 102 and are disallowed.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.