In re Gerald **FRIESENHAHN** and Joyce Friesenhahn, Debtors.

Bankruptcy No. 92–51599–C.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

July 18, 1994.

Johnny W. Thomas, San Antonio, TX, for debtors.

Marion A. Olson, Jr., Chapter 13 Trustee, San Antonio, TX.

Craig A. Gargotta, San Antonio, TX, for U.S.

### MEMORANDUM DECISION ON MOTION OF THE UNITED STATES OF AMERICA FOR LEAVE TO FILE THIRD AMENDED CLAIM AND FOR ALLOWANCE OF CLAIM, AND RESPONSE TO TRUSTEE'S CLAIMS RECOMMENDATIONS.

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration in the above styled case the motion of the United States of America on behalf of the Internal Revenue Service ("IRS") for leave to file a third amended proof of claim and for an order allowing the claim, and the response of the IRS to the chapter 13 trustee's claims recommendations. Upon consideration of the arguments of the parties, their legal memoranda, and the relevant authorities, the court concludes, for the several reasons expanded upon below, that the IRS is not entitled to file a third amended claim for the purpose of

adding an alleged responsible person liability under 26 U.S.C. § 6672 (West 1989 & Supp. 1994). The following constitutes the court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## *Jurisdiction*

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), and the District Court's general order of reference in bankruptcy proceedings. This is a core matter under 28 U.S.C. § 157(b)(2)(B).

## *Facts*

Gerald and Joyce Friesenhahn (collectively, the "debtors") filed a joint petition for relief under chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (as amended), on May 5, 1992. Prior to their chapter 13 filing, the debtors were involved with a company known as Southwest Machinery & Parts, Inc. ("Southwest"). In June 1991, both the debtors and Southwest were experiencing financial difficulties, which led to chapter 7 filings by the debtors and Southwest. The debtors received a discharge in their chapter 7 case on November 8, 1991.[1] There was no distribution to creditors in that case. Southwest, although an asset case, left most of its creditors unpaid, including priority creditors who received only approximately 2.8% on their claims.[2] The IRS, having filed a claim in the Southwest case for delinquent withholding and social security or "FICA" taxes,[3] received its pro rata share of the meager distribution. Southwest's case was closed, after distribution, on April 28, 1994.

In accordance with the local practice of this court, debtors' chapter 13 plan was confirmed on July 30, 1992, prior to the final date for filing claims, which was September 8, 1992. The plan proposed to pay all unsecured creditors—priority and general alike—one hundred percent of their claims over a period of approximately 60 months.

On August 10, 1992, the IRS, a scheduled creditor, filed a proof of claim (the "Original Claim") in the amount of $38,241.46 for federal income taxes, interest and penalties for the tax years 1990 and 1991. That claim was characterized as unliquidated because no returns had been filed by the debtors for those years. Debtors filed an objection to the IRS's Original Claim on September 11, 1992. In apparent response to the debtors' objection, the IRS filed its first amended claim (the "First Amended Claim") in the amount of $31,968.40. Like the Original Claim, the First Amended Claim sought recovery only of the debtors' personal federal income tax liability for the 1990 and 1991 tax years. On January 6, 1993, the IRS filed yet another claim (the "Second Amended Claim") which purported to amend the Original Claim. In the Second Amended Claim it was asserted that the debtors owed $21,968.64 in federal income taxes for the tax years 1990 and 1991. An agreed order was entered by the court on February 18, 1993, that allowed the Second Amended Claim of the IRS, and resolved the debtors' original objection.

In July 1993, the IRS filed the instant motion for leave to amend the Original Claim yet a third time (the "Third Amended Claim"). The Third Amended Claim asserted again the claim for debtors' personal federal income tax for the tax years 1990 and 1991, plus $212.13 in post petition accrued personal tax liability.[4] In addition, the Third Amended Claim included a claim of $36,560.68 ($18,280.34 × each debtor)[5] under 26

---

1. The debtors do not contend that the claim at issue herein was discharged in their prior chapter 7 case.

2. No evidence was offered by the parties regarding Southwest's case; however, to the extent relevant to the instant inquiry the court took judicial notice of its own files.

3. The IRS filed a proof of claim in the Southwest case on November 11, 1991. On November 19, 1992, the IRS filed an amended claim that included the liability asserted herein.

4. This aspect of the Third Amended claim was not addressed expressly by the parties. To the extent that those taxes indeed became payable post petition, then it is the IRS's prerogative to file a claim for those taxes pursuant to section 1305(a)(1).

5. Although the IRS made a claim against each debtor for the delinquent payroll taxes, it seeks only a single satisfaction of $18,280.34.

U.S.C. § 6672, also known as the responsible person or 100% penalty provision ("section 6672"). That latter claim was the result of the IRS's investigation into potential parties who could be responsible on Southwest's delinquent payroll taxes for the second quarter of 1991. There is no evidence in the record regarding when that investigation was begun, although the IRS represented that it completed its investigation in March 1993, at which time it concluded that the debtors were responsible parties, each liable for the penalty prescribed by section 6672.

### Discussion

The IRS's motion raises several complex issues of great interest to the chapter 13 bar and the debtors they represent, in general, and to these debtors, in particular. First, whether the Third Amended Claim is indeed as its name suggests—an amended claim—that relates back to the Original Claim. Second, whether the claim for responsible person liability which was first asserted post petition is a post petition tax liability proof of which may be filed under section 1305(a) of the Bankruptcy Code. Third, whether the IRS, although a scheduled creditor that received notice of the debtors' chapter 13 filing, did not receive sufficient notice of the debtors' potential liability under section 6672. In other words, were the debtors required not only to schedule the IRS as a creditor, but also to advise the IRS of the nature and substance of all claims that it held or may hold against them. Finally, in the event the IRS succeeds under none of the foregoing, the IRS argues that this case may be distinguished from this court's prior decision in *In re Duarte*, 146 B.R. 958 (Bankr.W.D.Tex. 1992), which held that, absent notice infirmities of statutory or constitutional stature, Rule 3002(c) of the Federal Rules of Bankruptcy Procedure creates an absolute bar date for the filing of claims in chapter 13 cases. Although the IRS does not press for the court to reverse *Duarte*, in light of the

decision in *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992), and it progeny, which held to the contrary, the court believes it is appropriate to reconsider this important issue. These issues will be addressed *seriatim.*

### A. Is the IRS's Third Amended Claim an "Amended" Claim in Fact?

■ Where a creditor files a claim within the time prescribed by the Federal Rules of Bankruptcy Procedure, *see* FED.R.BANKR.P. 3002(c), 3003 & 3004, or by court order, that claim may be amended. Amended claims generally relate back to the original filing they amend, timely or tardy as that may be. Like pleadings filed in other civil arenas, leave to amend is granted liberally with two provisos. First, the amended claim must be of the same basic genre as, or bear a sufficient relationship to, the claim or claims included in the original filing. In that regard an amendment may cure a defect in the claim as originally filed, describe the claim with greater particularity, or plead a new theory of recovery based upon facts set forth in the original claim. In effect, the inquiry parallels the inquiry made under Rule 15(c) of the Federal Rules of Civil Procedure, applicable herein through Rule 7015 and Rule 9014 of the Federal Rules of Bankruptcy Procedure. *See In re Unroe*, 937 F.2d 346 (7th Cir.1991); *In re Milan Steel Fabricators, Inc.*, 113 B.R. at 368. Rule 15(c) provides that an amendment will relate back to the initial filing if it arises out of the same "conduct, transaction, or occurrence." This test looks to whether the original claim was sufficient to place others on notice of the existence of the claim made in the amendment. *In re Milan Steel Fabricators, Inc.*, 113 B.R. at 368 (*citing* 6 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE, ¶ 1472 at 513 (2d ed. 1990)).

Second, it is generally agreed that a court's inherent equitable powers may intervene in the appropriate case to authorize an "amendment." [6] *See United States v. Kol-*

---

6. "Amendment" becomes a slippery term, as exemplified by the Seventh Circuit in *Unroe*. There the court rejected the contention that the IRS's untimely (under Rule 3002(c)) claim for 1983 taxes constituted an amendment to a timely filed

claim for 1986 and 1982 taxes. *In re Unroe*, 937 F.2d at 349. Commented the court:

The IRS's position could permit the Service to file a claim for one tax year and then, after the bar date, 'amend' by right the claim to include

*stad (In re Kolstad)*, 928 F.2d 171, 175 (5th Cir.1991); *United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213 (11th Cir.1985); *In re Kulick*, 85 B.R. 680 (E.D.N.Y.1988); *Barton v. United States (In re Barton)*, 151 B.R. 110 (Bankr.W.D.Mich.1993); *see also In re Ellington*, 151 B.R. 90, 94 (Bankr.W.D.Tex. 1993); *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990). In balancing the equities, courts commonly consider:

(1) Whether the debtor's creditors relied upon earlier filed proofs of claim or whether they had reason to know that the subsequent proofs of claim would follow;

(2) whether the other creditors would receive a windfall to which they are not entitled on the merits by the court's denying the amendment;

(3) whether the late filer intentionally or negligently delayed in filing the claim;

(4) the justification, if any, for the late filer's failure to request an extension of time within which to file a further claim;

(5) whether there are any other equitable considerations which should be taken into account.

*In re International Horizons, Inc.*, 751 F.2d at 1216; *In re Kulick*, 85 B.R. at 680–81.

On the issue of claims' amendments and the various standards for consideration the Fifth Circuit observed:

While helpful, these considerations are overlapping and seem to subsume two general questions: (1) whether [the creditor] is attempting to stray beyond the parameters of the original proof of claim and effectively file a 'new' claim that could not have been foreseen from the earlier claim or events such as an ongoing or recently commenced audit; and (2) the degree and incidence of prejudice, if any, caused by [the creditor's] delay.

*In re Kolstad*, 928 F.2d at 175 n. 7.

Those inquiries in effect seek to meet two objectives, which may sometimes compete.

On the one hand, "the bankruptcy law is not supposed to function merely as a procedural gauntlet that only the most adroit or best represented creditors can overcome." *In re Kolstad*, 928 F.2d at 173. Yet, on the other, "[a]mendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability." *Id.* at 175 (*citing In re Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir.1980)).

The principal concern in the assessment of an amendment to a claim is that there not be a *new* claim filed. What constitutes a *new* claim has been defined and applied variously. For example, highway use taxes have been held to bear no connection, generic or otherwise to FUTA (Federal Unemployment Tax Act) taxes, *In re Milan Steel Fabricators, Inc.*, 113 B.R. 364, 367 (Bankr.N.D.Ohio 1990), an amended tax claim for 1983 has been found to be new and different from a timely filed claim for similar taxes for 1981, *United States v. Owens*, 84 B.R. 361 (E.D.Pa. 1988); *In re Unroe*, 937 F.2d 346, 349 (7th Cir.1991); a claim for over one million dollars in corporate tax liability has been found to be new and different from a timely filed claim for $365 in interest, *Norris Grain Co. v. United States (In re Norris Grain Co.)*, 81 B.R. 103 (Bankr.M.D.Fla.1987), while responsible party liability (payroll and withholding taxes) for one year for one corporate entity has been found to be of the same basic genre as responsible party liability for another year and another corporate entity because they are all payroll taxes, *In re Barton*, 151 B.R. at 115; *see also In re Midwest Teleproductions Co.*, 69 B.R. 675, 677 (Bankr.N.D.Ohio 1987) (the addition for the first time of FUTA (Federal Unemployment Tax Act) taxes in an amended claim were accepted as an amendment because they were of the same specific genre as FICA taxes claimed in

---

any number of additional tax years. Separate years imply separate, discreet claims. *Id.* Notwithstanding, the court concluded the timely claim for 1986 and 1982 could nevertheless be "amended" on equitable grounds. The court's power to so act is derived under section 105 of the Bankruptcy Code. Rule 3002(c), the

court concluded, was not a statute of limitations because a true statute of limitations cannot be expanded or reduced, and Rule 3002(c) itself provides under certain circumstances for the expansion of the limitation. Therefore, intervention of the court's equitable powers would not be an abuse of discretion. *Id.* at 350.

the original proof of claim—they were both pay roll taxes). Where the IRS seeks to amend its claim only to reflect a higher amount for the same type of taxes, that claim too bears a sufficient semblance to the formerly timely filed claim. *In re Kolstad,* 928 F.2d at 175.

At one polar end of the continuum of relatedness is *Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953). In *Menick,* a case decided under the Bankruptcy Act of 1898 [repealed], the IRS filed a claim for delinquent withholding taxes and federal insurance contributions for the first quarter of 1950. One day after the expiration of the then statutory period for filing claims,[7] the IRS *amended* its claim to include personal federal income taxes of the debtors for the years 1944, 1945 and 1946. The debtors urged allowance and payment of the amended claim, although the trustee vehemently objected to the late claim. *Id.* at 367. The trustee argued that the amendment was really an attempt to interpose an entirely new, different, separate and distinct claim. *Id.* at 368.

The court recognized that the payroll taxes were distinct in nature and arose out of different facts. The court observed that they were all imposed under the internal revenue laws of the United States, however. Moreover, even if that were not a sufficient relationship, the taxes asserted in both the first and the amended claim were all, generically speaking, "income taxes"—the payroll withholding taxes were income taxes of the debtors' businesses' employees for which the debtors could be made personally liable. *Id.* Concluded the Ninth Circuit "[b]oth are demands of the same generic origin.... There is no change in the basic ground for recovery that is set out in the earlier claim on file with the referee." *Id.*

Understandably *Menick* is not without (many) critics. *See, e.g., In re International Horizons, Inc.,* 751 F.2d at 1216–17; *In re*

*Milan Steel Fabricators, Inc.,* 113 B.R. at 367 ("[The] need for finality [in bankruptcy cases] is not consistent with allowing amendments to relate back solely on the basis of so tenuous a connection."); *In re Midwest Teleproductions Co.,* 69 B.R. at 667 ("Standing alone, [such a tenuous connection] is certainly insufficient to permit the free-wheeling, belated filing of tax claims under the guise of amendments.").

The Eleventh Circuit in *International Horizons,* although expressly proclaiming neither to endorse nor to reject *Menick,* agreed with the lower courts in that case that *Menick* must be strictly confined to its fact. *In re International Horizons, Inc.,* 751 F.2d at 1217.[8] Notwithstanding the Eleventh Circuit's disclaimer, effectively it rejected the *Menick* rationale. The taxes at issue in *International Horizons* were withholding and FUTA taxes for which a claim had been timely filed, and, an alleged underpayment that related to disputed (non)recognitions for which no claim had been timely filed. *Id.* at 1217. Under the rationale of *Menick,* both the original withholding taxes and taxes claimed by the IRS as owed because of disallowed deductions would be considered, in a generic sense, income taxes. At the very least, they were taxes asserted under the internal revenue laws of the United States. Notwithstanding, the Eleventh Circuit, without further discussion, found the bankruptcy court's conclusion that "the amended claims, relating to nonrecognition of a transaction and adjustments premised upon complex [domestic international sales corporation] tax provisions, did not relate to basic withholding and FUTA taxes." *Id.*

■ Are the responsible person penalties at issue here sufficiently the same as, related to, or do they arise out of the same factual nucleus, the personal income taxes to which the IRS's Original Claim relates to characterize the IRS's Third Amended claim as a

---

7. Section 57n of the Bankruptcy Act, 11 U.S.C. § 93(n) [repealed], and Rule 302 of the former Rules of Bankruptcy Procedure provided that claims had to be filed within six months of the first meeting of creditors. Claims not filed within that period, were in the words of the statute and the rules not to be allowed, unless there was a surplus after all timely claims were paid.

8. Those facts included that the claim was filed only one day after the expiration of the statutory period, and a plea by the debtors that the claim be allowed.

genuine amendment? True, they both arise under the Internal Revenue Code the United States, and under *Menick* are both related, at least derivatively, to income. This tenuous connection is not sufficient in the eyes of this court to characterize the IRS's self-styled Third Amended Claim as an amendment in fact. Indeed, the court finds as much was implied by the Fifth Circuit in *Kolstad. In re Kolstad,* 928 F.2d at 175–76. The IRS's Original Claim for personal income taxes cannot be said to put one on notice of the subsequent claim for responsible officer penalties. This is not a case where the IRS merely seeks to describe its claim with greater specificity or plead a new theory of recovery based on the same set of facts.[9]

█ Equitable considerations too do not support the IRS in this case. At bottom the inquiry requires a balancing of interests, a leveling of the playing field. *See In re Kolstad,* 928 F.2d at 175 n. 7. Indeed, that is what was done in *Menick* where prejudice would befall no party if the claim filed one day past the deadline was allowed, and where no dividends yet had been distributed. By allowing the late claim to share on par with other creditors in *Menick,* the court furthered the debtors' fresh start, reducing the amount, if any, that would ultimately survive the debtors' discharge. Likewise, there was no real prejudice to the trustee in *Menick,* such as might come to fruition where distributions were in progress. While other creditors ultimately would receive a lesser dividend, they were in no way really prejudiced as no distributions yet had been made—thus, no possibility that creditors would be required to disgorge monies also received, and little chance that any party relied upon the non-existence of the claim.

Here, the IRS interposed this purportedly amended claim fourteen months after the debtors' chapter 13 filing and eleven months after the last date for which claims could be filed under Rule 3002(c). Debtors' plan provided for repayment of 100% of their unsecured indebtedness over approximately 60 months. Interjection of an additional $36,000 ($18,000 per each debtor) claim will foil the debtors' chapter 13 plan, and, it has been represented, likely too their entire reorganization. If the debtors cannot successfully implement a plan under chapter 13, this case must be dismissed, as the debtors are ineligible for relief under chapter 7. Dismissal of this case would be a drastic remedy, and certainly not in the best interests of the debtors or their creditors, including the IRS.

The court appreciates that withholding leave to file a third *amended* claim too is severe.[10] However, the IRS had notice of this bankruptcy filing, a filing that occurred some six months after the IRS filed a proof of claim in the Southwest case that reflected payroll taxes (FUTA, FICA and withholding) owing from possibly as early as 1988. That debtors were involved with Southwest as officers, employees and the sole shareholder was evident from the schedules and statements filed in the Southwest case, and that debtors had some relationship with Southwest also may be discerned from the debtors' schedules filed in this chapter 13 case. Yet the IRS took no action. Rule 3002(c)(1) of the Federal Rules of Bankruptcy Procedure provides the IRS's remedy in cases where further time is needed to finally determine liability. The IRS, together with other government bureaucracies, are granted an exception to the general rule under Rule 3002(c) of no extensions and no late filings in chapter 13 cases. No doubt the drafters of the Rules appreciated the pace at which governmental entities sometimes operate. The IRS failed to avail itself of that remedy. Where any party sits on its rights, equity will not intervene to relieve the party from the consequences of its actions. It is the responsibili-

---

9. That the debtors might have suspected or even known that Southwest's payroll taxes went unpaid does not justify the IRS's late filing. "Knowledge of a claim has never been held sufficient to constitute either formal or an informal proof of claim." *In re Ellington,* 151 B.R. 90, 99 (Bankr.W.D.Tex.1993) (citations omitted). "The claimant must take affirmative, definitive steps to assert that claim against the estate." *Id.* (citations omitted).

10. The discharge in a chapter 13 case is broad indeed. 11 U.S.C. § 1328. Except for limited exceptions not applicable here, the criteria against which discharge is measured is whether the claim was provided for under the plan.

ty of the IRS to initiate action to assess responsible person liability, not that of a debtor. The IRS should have moved more quickly.

The court concludes that the IRS's Third Amended Claim is neither a true *amendment* of the Original Claim, nor entitled to relate back under equitable principals.

### B. Was the IRS Denied Statutory Due Process? [11]

■ Debtors scheduled the IRS as a creditor on their chapter 13 schedules, and included the IRS on their creditor mailing matrix.[12] While those listings guaranteed the IRS notice of the bankruptcy filing, the IRS contends that that notice was insufficient with regard to the responsible officer liability it seeks now to impose upon the debtors. Specifically, the IRS contends that it had to be notified specifically of the debtors' potential responsible officer liability—the debtors should have listed the IRS as holding a claim, disputed or otherwise, for penalties under section 6672.

In support of this theory the IRS relies on this court's decision in *In re Vaughn,* 151 B.R. 87 (Bankr.W.D.Tex.1993). Other than broad principals of notice and entitlement of the IRS to statutory due process, *Vaughn* is inapposite to the instant case. In *Vaughn,* the IRS sought leave to file a proof of claim after the deadline of Rule 3002(c), and to have that claim deemed timely filed. The IRS initially had not been listed as a creditor, and although the creditor matrix later was amended to include the IRS, that amendment was not made until after the time for filing claims under Rule 3002(c) had expired. *Id.* at 88. Upon review of the relevant provisions of the Bankruptcy Code and the applicable Rules, *see* 11 U.S.C.

§ 342(a); FED.R.BANKR.P. 2002(a) & 1007(a), the court held that notwithstanding the apparent absolute nature of Rule 3002(c) the IRS was entitled to have its claim deemed timely filed under principles of statutory due process.

Here, the issue is not whether the IRS received notice, but rather whether the notice it did receive was sufficient—how much notice do the statute and Rules require. The IRS cited the court to no authority for its proposition that debtors are obliged to give creditors notice of the specific nature and extent of their respective claims. To no great surprise, the court's own research has uncovered no case in point.

On "notice," section 342 of the Bankruptcy Code provides in part:

> (a) There shall be given such notice as is appropriate, including notice to any holder of a community claim, of an order for relief in a case under this title.

11 U.S.C. § 342(a). Congress anticipated that the procedural rules would prescribe to whom such (appropriate) notice would be sent, and what form it would take. *See In re Vaughn,* 151 B.R. at 89 (*citing* H.Rep. No. 595, 95th Cong., 1st Sess. 331 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787).

To start the notice process in motion, the debtor must file with her petition a list that contains the name and address of each creditor, unless the petition is accompanied by a schedule of liabilities. FED.R.BANKR.P. 1007(a).[13] This requirement supplements the statutory directive to debtors to file schedules of assets, liabilities, current income, and current expenditures, and a statement of financial affairs. 11 U.S.C. § 521(a); *see also* FED.R.BANKR.P. 1007(b)(1), (c) & (d) (setting

---

**11.** Governmental entities, of course, do not enjoy the constitutional guaranty of due process afforded by the Fifth Amendment to the Constitution of the United States. Notwithstanding, governmental entities are entitled to whatever statutory due process a given legislative scheme provides. *See In re Vaughn,* 151 B.R. 87, 88 (Bankr.W.D.Tex. 1993) (*citing United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1091 (6th Cir.1990)).

**12.** "Omission of a creditor's name from the mailing matrix is just as impermissible as omission

from the formal schedules." *Omni Mfg., Inc. v. Smith (In re Smith),* 21 F.3d 660, 661 (5th Cir. 1994) (*citing Bonner v. Adams (In re Adams),* 734 F.2d 1094 (5th Cir.1984)).

**13.** Local rules in many jurisdiction often expand upon this requirement, and require debtors to provide with their petitions creditor matrices of prescribed form that aid the court in meeting its notice obligations. *See* LOCAL CT.R. OF THE U.S.BANKR CT. FOR THE W.D.TEX. 1007(a).

forth the form and time within which the debtor's schedules and statements must be filed). Those lists and schedules aid the court in fulfilling its duties to notify all creditors of, *inter alia*, the filing of the case, the first meeting of creditors and the dates by which creditors must file claims and objections to discharge and dischargeability. *See* FED.R.BANKR.P. 2002(f) ("the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of (1) the order for relief; ... (3) the time allowed for filing claims pursuant to Rule 3002 ...."). While creditors are entitled to notice of, *inter alia*, the first meeting of creditors, the last day for timely filing of claims and objecting to discharge or dischargeability (in chapter 7 and chapter 11 cases), there is no requirement that any of those notices include information to each individual creditor of the nature and extent of their claim, as scheduled by the debtor.

The debtors here filed the required creditor lists, together with their schedules and statements, with their petition for relief. The IRS was listed as a creditor, and included on the mailing matrix of creditors. As a result, when the clerk of the court mailed notice to all creditors of the debtors of the chapter 13 filing, the date and time of the 341 meeting of creditors and the Rule 3002(c) deadline for filing timely claims, the IRS too received notice. The IRS has never contended otherwise. The IRS thus received all the notice required under the statute and the rules, and therefore cannot claim to have been denied statutory due process. In other words, there is no obligation to notify a creditor of what all its potential claims might be, and neither is that the purpose of the schedules.

An example is illustrative: Debtor "A" files a chapter 13 petition. The IRS is listed as a creditor, and scheduled as holding a disputed and unliquidated claim. The IRS receives notice of the filing. The debtor has not filed tax returns for five years. The debtor's plan provides that all priority claims, including those of the IRS, will be paid in full over the life of the plan. The debtor anticipates the IRS's claim to be in the range of $20,000. The debtor's plan is confirmed, and

the Rule 3002(c) deadline for filing claim passes with no claim filed by the IRS. The debtor files her returns. A year later, the IRS files a claim for $60,000, the majority of which is penalty and interest. The IRS contends that it could not have filed a claim before that time because the debtor had yet to file returns. In other words, the IRS was not sure it had a claim, let alone how much, and the debtor's schedules and statements did not shed any light on the matter. Does the IRS have a notice defense to a challenge that its claim is untimely? The court thinks not. As discussed *supra,* Congress foresaw that the government may require additional time to file claims in some cases, and provided a special exception to the otherwise inflexible rule for filing claims in chapter 13 cases. FED.R.BANKR.P. 3002(c)(1). The IRS can seek an extension of time to file a claim. Failing to avail itself of that remedy leaves the IRS with little to complain about. Like any other creditor who sits on its rights, it must accept the consequences. The instant case does not warrant a different result.

### C. Is the Responsible Person Liability a Post Petition Claim Under Section 1305(a)(1)?

The IRS originally relied exclusively on the foregoing arguments, of amendment and due process. At the first hearing on the matter, however, the court inquired of the parties whether the responsible person liability could be deemed a post petition claim within the meaning of section 1305(a)(1) of the Bankruptcy Code. Particularly, the court inquired whether the Fifth Circuit's decision in *In re Ripley,* 926 F.2d 440 (5th Cir.1991), would drive the outcome in this case. That issue was briefed by the parties.

Section 1305(a) provides in part:

**Filing and allowance of postpetition claims.**

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending ...

11 U.S.C. § 1305(a).

The IRS takes the position of course that the responsible person liability is a post peti-

tion liability for which the IRS is entitled under section 1305(a) to file a proof of claim, if it so elects. The IRS reasons that the liability imposed under section 6672 *becomes payable* only after the IRS completes its investigation, and makes a demand and assessment for the delinquent trust fund taxes. The debtors, to the contrary, contend that the section 6672 liability became payable at the time Southwest's withholding tax returns were due to be filed and those dates were prepetition.

The Fifth Circuit recently had occasion to address section 1305(a). *In re Ripley,* 926 F.2d 440 (5th Cir.1991). In *Ripley,* the question was whether self-employment taxes, for which estimated payments are required to made quarterly throughout the year, *become payable* at the time the estimated payment is due or at the time the taxpayer is required to file her annual tax return. Both the bankruptcy and the district courts held that the self employment taxes became payable at the time the estimated payments were due—hence, each quarter. Under that rationale, where a debtor files during the fourth quarter of a year, those taxes that accrued the first three quarters would be prepetition liabilities. The Fifth Circuit disagreed.

The Fifth Circuit first imbued the phrase *become payable* with a mandatory spirit. That is to say, "taxes that have 'become payable' are those that *must be paid* now[,]" not merely those that one is permitted (but not necessarily required) to pay now. *Id.* at 444. That conclusion, according to the *Ripley* court, was compelled by the usual and customary meaning of "payable." Citing Black's Law Dictionary, the court noted that "payable" is defined as "not only '[c]apable of being paid' but also 'justly due' and 'legally enforceable.'" *Id.* (*quoting* BLACK'S LAW DICTIONARY 1128 (6th Ed.1990)). The latter, concluded the court, "is the only reasonable meaning to be affixed to the word as it is used in section 1305." *Id.*

To determine when a tax became payable, as so defined, the Fifth Circuit looked to the Internal Revenue Code ("IRC"). The court concluded, notwithstanding the interim accrual of penalties and interest in the event that quarterly installments are not made, that self employment taxes do not become payable until the taxpayer is required to file her personal income tax return for her taxable year. *Id.* (*citing* 26 U.S.C. §§ 6151 & 1401 (1989)). The court observed that the IRS could not seek immediate payment of the delinquent quarterly installments or the penalties imposed for such delinquency; rather it must wait until after the taxpayer files her annual tax return. *Id.* (*citing* 26 U.S.C. § 6201(b)(1) (1989)). Assessment was similarly rejected as the relevant point of inquiry. *Id.* (*citing In re Pennetta,* 19 B.R. 794, 796 (Bankr.D.Colo.1982)).[14] For the lower courts conclusion to stand there would have had to have been a truly quarterly tax—one for which tax returns must be filed quarterly. There, the only claim that would have become payable post petition would have been for quarters that in fact end post-petition.[15]

■ The IRS proclaims victory in the Fifth Circuit's definition of "becomes payable" in *Ripley.* The IRS contends that the responsible party liability is not legally payable—and thus does not become payable—until the IRS performs its investigation, makes an assessment and serves the responsible party with notice of the assessment and demand for payment. Because no "assessment" was made in the Friesenhahn case until after they filed chapter 13, the responsible person liability in this case became payable post petition. The court does not find that *Ripley* compels such a result. Moreover, the conclusion urged by the IRS misses the focus of section 1305(a)(1) and disregards the purpose of that provision.

The focus of section 1305(a)(1) is *taxes that become payable to a governmental unit while the case is pending.* The liability imposed under section 6672 is not a true "tax." Indeed, the very chapter of the IRC that includes section 6672 is entitled "Additions to

---

**14.** In *Pennetta,* the court rejected the IRS's argument that assessment was the relevant date, and concluded that taxes become payable at the time the tax return is due. *In re Pennetta,* 19 B.R. at 796.

**15.** *See infra* note 20.

the Tax, Additional Amounts and Assessable Penalties." Section 6672 further refers to the liability assessed thereunder as a penalty.[16] However, it is not a penalty in a penal sense.[17] As explained by one court, it is "simply a means of ensuring the [withholding] tax is paid." *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir.1986). Liability under section 6672 is derivative always of the employer's delinquent withholding taxes. Thus, while the *claim against the* *debtors* asserted by the IRS arises under section 6672, the *tax* from which the claim is derived does not. We must therefore focus not on when the *claim* became payable but on when the *tax* from which that claim is derived became payable.[18] Under *Ripley* a tax becomes payable at the time the tax return is due to be filed. Returns for withholding taxes are required to be filed quarterly by the withholding entity.[19] Section 6672 of the IRC imposes no duty upon a

**16.** Section 6672 provides:

**§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax**

(a) **General rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

**17.** The issue of "tax" or "penalty" was not far from the points addressed by the United States Supreme Court in *United States v. Sotelo*, .436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978). In *Sotelo* the question was whether responsible officer liability for unpaid withholding taxes was dischargeable under section 17a(1)(e) of the Bankruptcy Act. 11 U.S.C. § 35(a) [repealed.] Section 17a(1)(e) provided:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, ... except such as (1) are *taxes* which became legally due and owing by the bankrupt to the United States ... within three years preceding bankruptcy: *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes ... (e) which the bankrupt has collected or withheld from other as required by the laws of the United States ... but has not paid over....

11 U.S.C. § 35(a) [repealed 1979] (emphasis added).

The Court of Appeals had concluded in *Sotelo* that the liability that arises under section 6672 was not a "tax" within the meaning of section 17a(1)(e) of the Bankruptcy Act. Hence, resolved the circuit court, section 17a(1)(e) was not applicable in that context. The Supreme Court disagreed, finding that that analysis was inconsistent with the language of the statute. First, the Court noted that the funds at issue were "'unquestionably 'taxes' at the time they were collected or withheld from other.'" *Id.* at 275, 98 S.Ct. at 1800. Continued the Court:

"It is this time period that § 17a(1)(e), with its modification of 'taxes' by the phrase 'collected or withheld,' treats as the relevant one. That the funds due are referred to as a 'penalty' when the Government later seeks to recover them does not alter their essential character as taxes for the purposes of the Bankruptcy Act [section 17a(1)(e)]."

In support of its conclusion, the Court looked to the legislative history of the Bankruptcy Act provision, that had been added in 1966, and found a clear intention of Congress to make nondischargeable liability, direct or derivative, for trust fund taxes. *Id.* at 276–78, 98 S.Ct. at 1801–02. When Congress overhauled the bankruptcy laws in 1979, it substantially re-codified section 17a(1)(e) of the Bankruptcy Act and incorporated the teachings of *Sotelo*. Section 523(a)(1) of the Bankruptcy Code by incorporation of section 507(a)(7)(C) makes nondischargeable any tax required to be collected or withheld and for which the *debtor is liable in whatever capacity*. 11 U.S.C. § 507(a)(7)(C) (emphasis added). The new provision makes clear that responsible officer liability is nondischargeable.

**18.** Even the IRS acknowledges that responsible officer liability accrues (or is due) upon the employer's failure to remit the withholdings to the IRS. The IRS's Third Amended Claim states that the "100% penalty [is] due, but not assessed, pursuant to the provisions of section 6672 of the Internal Revenue Code."

That liability may accrue *vis-a-vis* the responsible party does not relieve the employer of liability, as the direct and derivative liabilities are distinct obligations, and the latter is imposed as a means to assure payment, nothing more. *See, e.g., United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir.1986).

**19.** Sections 3102(a) and 3402(a) of the Internal Revenue Code require an employer to withhold from her employee's wages, social security ("FICA") taxes as well as personal income taxes. The employer holds these withholdings in trust for the United States, 26 U.S.C. § 7501, and is obliged to pay the withheld sums over to the government on a quarterly basis. 26 U.S.C. § 6011. Not only must the employer remit the withholdings to the IRS, with the remittance also

responsible party to file a return under section 6672. The withholding taxes that allegedly were not remitted to the government in the instant case relate exclusively to periods for which tax returns were due prepetition. The *tax* which the IRS seeks to recover therefore *became payable* prepetition, when Southwest's quarterly payroll tax returns were due to be filed.[20] The IRS's claim under section 6672 did not *become payable* within the meaning of section 1305(a)(1).[21] This result is consistent with and indeed supported by *Ripley*.[22]

must be filed a quarterly tax return for the period. 26 U.S.C. § 6011. As the Fifth Circuit noted, withholding taxes are truly a quarterly, rather than annual, tax.

**20.** It is unlikely too that the *claim against the debtors* under section 6672 became payable post petition; but that does not mean that the IRS did not have a *claim*—contingent and unliquidated within the meaning of the Bankruptcy Code upon the filing of debtors' chapter 13 petition. The IRS insists that it cannot collect under section 6672 until it has taken the requisite actions in-house, *i.e.*, investigation, determination of the responsible party, assessment and demand. However, the notice and demand required under section 6303 of the Internal Revenue Code " 'is for the protection of the taxpayer only in case the IRS use[s] the summary administrative remedies to collect the tax that are available to it.... [S]uch notice is not required as a prerequisite to filing a civil action, because the filing allows sufficient time for the taxpayer to consider and pay any tax that is due....' " *Purcell v. United States*, 1 F.3d 932, 941 (9th Cir.1993); *see also United States v. McCallum*, 970 F.2d 66, 69–70 (5th Cir.1993). In other words, assessment is a helpful but nonmandatory step in the direction of enforcement, only. Subsection (b)(5) of section 6672 supports that conclusion. Subsection (b)(5) is the equivalent of an insecurity clause in a commercial mortgage. If the IRS believes that collection of the one hundred percent penalty is in jeopardy, it may proceed immediately with collection. 26 U.S.C. § 6672(b)(5).

**21.** A contrary conclusion would open the door to the IRS to manipulate with impunity when a tax becomes payable for bankruptcy purposes. The IRS could engage in its own prebankruptcy planning by delaying responsible person assessment against a taxpayer who was in a high risk group in which bankruptcy filing was likely. The IRS freely could convert a prepetition claim into postpetition claim. And where would that leave the supplier who, suspecting a bankruptcy filing, delays invoicing prepetition shipments to the debtor until after the bankruptcy filing. Does the supplier have a post petition claim? Of course

### D. Is Failure to File a Proof of Claim Within the Limitation of Rule 3002(c) Grounds to Bar The Claim From Participating in Distributions Under a Confirmed Plan?

Although the IRS did not strongly urge this court to reconsider its previously stated position on late filed claims in chapter 13 cases, *see In re Duarte*, 146 B.R. 958 (Bankr. W.D.Tex.1992), in light of the recent explosion of claims litigation on just that issue the court feels obliged to take a second look at the issue with the benefit of *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992) (*en banc*), and the wave of decisions precipitated thereby.[23]

not. In the absence of an express statutory mandate to the contrary, the court can discern no reason the government should escape that same fate.

**22.** The district court in *Ripley* relied on *In re Miller*, 90 B.R. 317 (Bankr.E.D.Tenn.1988), to conclude that the self employment taxes owed by the debtor in *Ripley* were post petition taxes under section 1305. In *Miller*, as in the case before this court, the IRS contended that its claim for unpaid employment taxes under section 6672 were within section 1305(a)(1). The *Miller* court rejected the IRS's position with respect to three of the four quarters for which the IRS sought recovery. Of *Miller*, the Fifth Circuit commented:

> *Miller* is plainly distinguishable from the instant case. In *Miller*, the government sought recovery of a truly quarterly tax rather than an annual tax. Internal Revenue Code section 3111, 26 U.S.C. § 3111, ..., imposes the familiar social security tax upon employers. The accompanying regulations require employers to file a tax return not on an annual basis, but following the end of each quarter. The courts holding in *Miller* thus fully comports with (and lends further support to) our view that taxes 'become payable' when the tax return is due.

*In re Ripley*, 926 F.2d at 446 (footnote omitted); *see also In re Jones*, 164 B.R. 543 (Bankr. N.D.Tex.1994) (collection activities that related to responsible person liability assessed post petition for prepetition quarterly taxes was violation of the discharge injunction); *Workman v. United States (In re Workman)*, 108 B.R. 826 (Bankr. M.D.Ga.1989).

**23.** Indeed, no less than three dozen published opinions have been released on the issue of claims (so-called) bar dates under Rule 3002(c) in chapter 13 and chapter 7 cases. Those that support a reading of Rule 3002(c) as a strict bar date include: *Jones v. Arross*, 9 F.3d 79 (10th Cir.1993); *United States v. Clark*, 166 B.R. 446 (D.Utah 1993); *In re Jones*, 164 B.R. 543 (Bankr. N.D.Tex.1994); *In re Andrew*, 162 B.R. 46 (Bankr.M.D.Ga.1993); *In re Rome*, 162 B.R. 872 (Bankr.D.Colo.1993); *In re Leightner*, 161 B.R.

In *Duarte,* quite simply, this court strictly applied Rule 3002(c) of the Federal Rules of Bankruptcy Procedure, and concluded that unless a creditor comes within one of the narrow exceptions of Rule 3002(c),[24] the court has no authority to extend the time in which a creditor may timely file a claim, and a claim not timely filed is entitled to no distribution under a chapter 13 plan (unless otherwise provided for therein). In effect, the court applied section 3002(c) as if it were a federal statute of limitations or bar date.

Until *Hausladen* (decided but a week before this court's decision in *Duarte*) it was considered well settled that Rule 3002(c) cut off a claimholder's entitlement to receive distributions in a chapter 13 case. *Hausladen* rejected that long held notion, equating the concept of a time bar with disallowance and concluding that it effected a substantive matter not to be dealt with in the procedural rules. The *Hausladen* panel opined that Rule 3002(c) was a hastefully drawn adaptation from the predecessor rules that applied

60 (Bankr.D.Or.1993); *In re Keck,* 160 B.R. 112 (Bankr.N.D.Ind.1993); *In re Chavis,* 160 B.R. 804 (Bankr.S.D.Ohio 1993); *In re Stoiber,* 160 B.R. 307 (Bankr.N.D.Ohio 1993); *United States v. Messics (In re Messics),* 159 B.R. 803 (Bankr. N.D.Ohio 1993); *In re Crooker,* 159 B.R. 790 (Bankr.E.D.Ky.1993); *In re Osborne,* 159 B.R. 570 (Bankr.C.D.Cal.1993), *aff'd slip op.,* 1994 WL 174004, 1994 U.S.App.LEXIS 607 (9th Cir. Apr. 15, 1994) (relying on and bound by *In re Tomlan,* 907 F.2d 114 (9th Cir.1990) *(per curiam), aff'g* 102 B.R. 790 (E.D.Wash.1989)); *In re Turner,* 157 B.R. 904 (Bankr.N.D.Ala.1993); *In re Parr,* 165 B.R. 677 (Bankr.N.D.Ala.1993); *In re Zimmerman,* 156 B.R. 192 (Bankr.W.D.Mich. 1993) *(en banc); In re Johnson,* 156 B.R. 557 (Bankr.N.D.Ill.1993); *In re Bailey,* 151 B.R. 28 (Bankr.N.D.N.Y.1993); *In re Stoecker,* 151 B.R. 989 (Bankr.N.D.Ill.1993).

Agreeing with *Hausladen* that Rule 3002(c) cannot impose a bar date include: *In re Gullatt,* 164 B.R. 279 (Bankr.M.D.Tenn.1994); *In re Babbin,* 164 B.R. 157 (Bankr.D.Colo.1994) (after remand); *In re Osman,* 164 B.R. 709 (Bankr. S.D.Ga.1993); *In re Sullins,* 161 B.R. 957 (Bankr.M.D.Tenn.1993); *In re Brenner,* 160 B.R. 302 (Bankr.E.D.Mich.1993); *In re McLaughlin,* 157 B.R. 873 (Bankr.N.D.Iowa 1993); *In re Judkins,* 151 B.R. 553 (Bankr.D.Colo.1993); *In re Rago,* 149 B.R. 882 (Bankr.N.D.Ill.1992). *See also United States v. Vecchio (In re Vecchio),* 20 F.3d 555 (2d Cir.1994) (in chapter 7 context, late filed priority claims are entitled to the same, first, priority as timely filed claims—Rule 3002 cannot work to disallow claims on the ground of tardiness).

24. Rule 3002 provides:
   (a) **Necessity for Filing.** An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.
   \*    \*    \*    \*    \*    \*
   (c) **Time for Filing.** In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 342(a) of the Code, except as follows:

(1) On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof. (2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either. (3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period of such further time as the court may permit, the claim shall not be allowed. (4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct. (5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice. (6) In a chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court may grant an extension of time for the filing of claims against the surplus not filed within the time hereinabove prescribed.

Fed.R.Bankr.P. 3002.
While the court has discretion to extend time for filings and to allow late filings under certain circumstances, under Rule 3002(c) the court is afforded no such discretion. *See* Fed.R.Bankr.P. 9006(b)(2) (the court may enlarge time under Rule 3002(c) only to the extent and under the conditions stated therein); *In re Duarte,* 146 B.R. at 960. As discussed in *Duarte,* the cooperation of the debtor or the trustee may alleviate the problem as filings by debtors and trustees are subject to the court's discretion. *Id.*

under the Bankruptcy Act of 1898 [repealed], and for a period of time under the Bankruptcy Code. *In re Hausladen,* 146 B.R. at 559. The confusion is rooted, concluded the *Hausladen* court, in Section 57n of the Bankruptcy Act, 11 U.S.C. § 93(n) [repealed], that provided "[c]laims which are not filed within six months after the first date set for the first meeting of creditors *shall not be allowed....*" Old rule 302 of the Bankruptcy Rules of Procedure reflected, word for word, this limitation on *allowance.* Section 502 of the Bankruptcy Code provides an exclusive list of grounds upon which the court may *disallow* a claim, proof of which has been filed. Untimeliness is not among them.[25] Observing that no statutory limitation exists under the Bankruptcy Code the *Hausladen* court concluded that the nearly wholesale carry over of old rule 302 was in contravention of the Bankruptcy Code.

That untimely or tardily filed claims are not disallowed is further evidenced, said the *Hausladen* court, by section 726 of the Bankruptcy Code. Section 726, although not directly applicable in chapter 13 cases, sets forth the distribution priority scheme in chapter 7 cases. That scheme expressly includes provision for allowed unsecured untimely claims. Thus, concluded the *Hausladen* court, untimeliness cannot be a ground to disallow a claim.

The *Hausladen* court found this "plain meaning" approach not inconsistent with the intentions of Congress. *Id.* at 560. Toward that end, the court offered that while timeliness could not effect (dis)allowance of a claim, timeliness could be factored into treatment of the claim. *Id.* That is, to avoid the failing of a plan in mid-term, debtors may include in their plans special provisions for tardily filed claims. Those provisions may provide that tardy claims receive no distribution, receive distribution on par with all other similarly situated creditors who timely filed their claims, or any arrangement in between. *Id.* at 560–61. Under this approach the court concluded, Rule 3002(c) is not inconsistent with the Bankruptcy Code (and thus invalid under the Rules Enabling Act, 28 U.S.C. § 2075). Rather it merely addresses different issues.

Recently, following *Hausladen* and adding to it, the Honorable Keith M. Lundin found three additional statutory reasons why Rule 3002(c) does not effect a bar date, or a limitation of any independent stature. *In re Gullatt,* 164 B.R. 279 (Bankr.M.D.Tenn.1994). First, Judge Lundin looked to section 501(a), which addresses the filing of proofs of claim by creditors. That section speaks not in terms of timeliness or untimeliness. Subsections (b) and (c) of section 501, which provide that the debtor, the trustee, or a codebtor may file a claim on behalf of a creditor if the creditor does not timely file a claim, however, refer to timely filed claims. Observed Judge Lundin, if tardiness were the equivalent of disallowance those provisions would be meaningless. *Id.* at 280. In other words, if a late claim was unequivocally a disallowed claim, by what means would it spring back to life or be resuscitated merely by the debtor's, the trustee's or the codebtor's actions. *Id.*

Judge Lundin next directed the skeptic to section 506(d) which voids liens that secure claims that are not "allowed secured claims." *Id.* at 281. An exception to that general rule is provided in subsection (d)(2), where the claim is not an allowed secured claim "due only to the failure of any entity to file a proof of such claim under § 501...." 11 U.S.C. § 506(d)(2). If untimeliness in the filing of a claim is grounds for disallowance, it is omitted as an exception to the voiding power in section 506(d)(2)--an omission not even Congress was likely to make. *In re Gullatt,* 164 B.R. at 281.

---

**25.** *Hausladen* parallels in this regard two cases decided prior to the adoption of the new rules of procedure—section 405 of the Bankruptcy Reform Act of 1978 provided that the old rules would apply under the new law, to the extent they were not inconsistent therewith, until such time as new rules were promulgated. *In re Corbett,* 27 B.R. 442 (Bankr.W.D.Mo.1983), *rev'd,* 68 B.R. 480 (W.D.Mo.1984); *In re Collins,* 33 B.R. 203 (Bankr.E.D.N.C.1983). Those cases reasoned that the old rule 302 indeed either was inconsistent with section 502 of the Bankruptcy Code insofar as it directed that any claim not filed within the set period was disallowed, with a debtor's intention to pay a scheduled creditor, or with the purpose of chapter 13. The new rules were transmitted to Congress by the Chief Justice of the Supreme Court on April 25, 1983, and became effective August 1, 1983.

Finally, Judge Lundin observed that under section 1325(a)(4) confirmation of a plan requires satisfaction of the best interest of creditors test. *Id.* at 282. "That test requires that the property to be distributed on account of each allowed unsecured claim must be not less than the amount that would be paid on such claim if the estate were liquidated under Chapter 7 on the effective date of the plan." *Id.* To determine if the best interests test is satisfied, the court must look to the distribution scheme under section 726. Late filed claims are entitled to distributions in chapter 7 cases, 11 U.S.C. § 726(a)(2) & (a)(3), therefore they cannot be summarily disallowed in a chapter 13 case.

■ With due respect for my learned brethren, I must disagree with their conclusions. The Bankruptcy Code and the Rules must be harmonized unless it is impossible to do so, and if two plausible interpretations are possible, the one that is both possible and most consistent with congressional intent should prevail.

Underlying both *Hausladen* and *Gullatt* is a central presumption that does not withstand scrutiny. That presumption is the foundation of their position, and once it crumbles, it takes with it the structure that is their position. That presumption is that an untimely filed claim is a "claim ..., proof of which is filed under section 501 of this title." A claim filed under section 501 is deemed allowed under section 502(a), unless objection is made thereto upon one of the eight enumerated grounds of section 502(b). For the follower of *Hausladen* there is but a single inquiry in the case of late claims—are there grounds under 502(b) to *disallow* the late claim? Because lateness is not one of the enumerated grounds under section 502(b), those courts answer the inquiry in the negative. To *disallow* the claim on the ground of lateness, it is concluded, would effect a substantive change in the statute, which of course is prohibited under the Rules Enabling Act, 28 U.S.C. § 2075.[26]

That conclusion, that a bar on participation on untimely filed claims would effect an illegitimate substantive change in the law, is drawn from the courts' observations that Rule 3002 was a reworking of old rule 302,[27]

---

**26.** Section 2075 of title 28 provides:
The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motion and practice and procedure in cases under title 11.
Such rules shall not abridge, enlarge, or modify any substantive right.
Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been reported.
28 U.S.C. § 2075 (West 1994).

**27.** Old rule 302 provided:
(a) *Manner of Filing.* In order for his claim to be allowed, every creditor, including the United States, any state, or any subdivision thereof, must filed a proof of claim in accordance with this rule, except as provided in Rules 303 and 304.
(b) *Place of Filing.* A proof of claim shall be filed in the place prescribed by Rule 509.
(c) *Claims Founded on a Writing.* When a claim, or an interest in property of the bankrupt securing the claim, is founded on a writing, the original or a duplicate shall be filed with the proof of claim unless the writing has been lost or destroyed. If lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim. If a security interest in property of the bankrupt is claimed, the proof of claim shall be accompa-

nied by satisfactory evidence that the security interest has been perfected.
(d) *Transferred Claims.*
\* \* \* \* \* \*
(e) *Time for Filing.* A claim must be filed within 6 months after the first date set for the first meeting of creditors, except as follows:
(1) On application before the expiration of such period and for cause shown, the court may grant a reasonable, fixed extension of time for the filing of a claim by the United States, a state, or a subdivision thereof.
(2) In the interest of justice the court may grant an infant or incompetent person without a guardian up to an additional 6 months for filing a claim.
(3) A claim which arise in favor of a person or becomes allowable because of a judgment for the recovery of money or property from such person or because of a judgment denying or avoiding a person's interest in property may be filed within 30 days after such judgment becomes final, but if the judgment imposes a liability which is not satisfied, or a duty which is not performed, within such period of such further time as the court may permit, the claim shall not be allowed.
(4) If notice of no dividend was given pursuant to Rule 203(b), and subsequently the payment of a dividend appears possible, the Court shall notify the creditors of that fact and shall grant them a reasonable, fixed time for filing claims of not less than 60 days after the mailing of

which implemented section 57n of the Bankruptcy Act of 1898 (as amended) [repealed],[28] which itself included a limitations period for filing claims. Because section 502 of the Bankruptcy Code does not direct, as did section 57n of the Bankruptcy Act, that untimely filed claims "shall not be allowed," *Hausladen* found section 502 to reflect a "major change" in statutory law. *In re Hausladen*, 146 B.R. at 559 ("Under the Bankruptcy Act, late claims were expressly disallowed."); *see also In re Gullatt*, 164 B.R. at 282 ("The abandonment of § 57n effected a substantive change in bankruptcy law, not simply a reorganization of procedural matters."). While it is true that section 502 does not provide that late claims "shall not be allowed," it is premature on that basis alone to conclude that it reflects a "major change" in the law. To appreciate the omission from the statute of such a directive and the effect of that omission we must consider the relationship between the Bankruptcy Act and the old procedural rules. When as much is done it becomes clear that the statutory "disallowance" of late claims under the Bankruptcy Act was not a matter of substantive law; it was a matter of procedure that, upon enactment of the Bankruptcy Code in 1979, became the exclusive providence of the procedural rules. Thus, to find that Rule 3002(c)

creates a time bar for late claims in chapter 13 cases does not effect a substantive change in the law—section 502 does not effect a major change in the law.

Under the Bankruptcy Act procedural matters initially were taken up in the Act itself; there were no separate procedural rules. The first procedural rules were adopted in 1973, and, in fact, were not *completed* until the eve of enactment of the Bankruptcy Code in 1979. Because Congress was lax in updating the procedural aspects of the Act to reflect changes in the law and practice, the corresponding Rules Enabling Act, 28 U.S.C. § 2075 (as codified prior to the effective date of the Bankruptcy Code), provided that the rules superseded the Act, to the extent the rules affected procedure and not substance. Thus, although the Act continued to include matters procedural in nature, the old rules were the governing "law."

A review of section 57n, which covered in name *Proof and Allowance of Claims*, reveals that many of its provision had been superseded by the rules of procedure by 1979. *See* 3 King, COLLIER ON BANKRUPTCY, § 57 at 101–07 (14th ed. 1977 & Supp.1982). For example, subsection "a" provided:

> A proof of claim shall consist of a statement, in writing and signed by a creditor,

notice or six months after the date set for the first meeting of creditors, whichever is latter. (5) If all claims allowed have been paid in full, the court may grant a reasonable, fixed extension of time for the filing of claims not filed within the time hereinabove prescribed against any remaining surplus.

BANKR.R.P. 302 [repealed].

**28.** Section 57n of the Bankruptcy Act provided:

Except as otherwise provided in this Act, all claims provable under this Act, including all claims of the United States and of any State or subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors *shall not be allowed: Provided, however,* That the court may, upon application before the expiration of such period and for cause shown, grant a reasonable fixed extension of time for the filing of claims by the United States or any State or subdivision thereof: *Provided further,* That, [except in proceedings under chapters X, XI, XII, and XIII of this Act,] the right of

infants and insane persons without guardians, without notice of the bankruptcy proceedings, may continue six months longer: *And provided further,* That a claim arising in favor of a person by reason of the recovery by the trustee from such person of money or property, or the avoidance by the trustee of a lien held by such person, may be filed within thirty days from the date of such recovery or avoidance, but if the recovery is by way of a proceeding in which a final judgment has been entered against such person, the claim shall not be allowed if the money is not paid or the property is not delivered to the trustee within thirty days from the date of the rendering of such final judgment, or within such further time as the court may allow. *When in any case all claims which have been duly allowed have been paid in full, claims not filed within the time hereinabove prescribed may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in such case.*

11 U.S.C. § 93(n) [repealed] (emphasis added).

setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefore; and whether any and, if so, what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditor. A proof of claim filed in accordance with the requirements of the Bankruptcy Act, the General Orders of the Supreme Court, and the official forms, even though not verified under oath, shall constitute prima facie evidence of the validity and amount of the claim.

11 U.S.C. § 93(a) [repealed]. Subsection "a" was superseded by old rule 301:

(a) *Form and Content.* A proof of claim shall consist of a statement in writing setting forth a creditor's claim and, except as provided in Rules 303 and 304, shall be executed by the creditor or by his authorized agent. A proof of claim for wages, salary, or commissions shall conform substantially to Official Form No. 16 or No. 16A; any other proof of claim shall conform substantially to Official Form No. 15.

(b) *Evidentiary Effect.* A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

BANKR.R.P. 301 [repealed].

Subsection "c" of section 57 provided:

Proofs of claim may, for the purpose of allowance, be filed by the claimants in the court of bankruptcy where the proceedings are pending or before the referee if the case has been referred.

11 U.S.C. § 93(c) [repealed].[29] Too, subsection "c" was superseded by the old procedural rules. Old rule 302(b) provided that a proof of claim was to be filed in the place prescribed by old rule 509. Old rule 509 provided that after reference to the referee, all papers were to "be filed with the referee unless otherwise directed by local rule or by order of the judge." BANKR.R.P. 302(b) & 509 [repealed].

Subsection "d" provided:

Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be

continued for cause by the court upon its own motion: *Provided, however,* That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act.

11 U.S.C. § 93(d) [repealed]. Old rule 306(d) modified the first part of the provision:

*Allowance When No Objection Made.* Subject to the provisions of subdivision (d) of this rule, a claim filed in accordance with Rule 302, 303, or 304 shall be deemed allowed for the purpose of distribution unless objection is made by a party in interest.

BANKR.R.P. 306(d) [repealed].

Certain of the old rules substantially restated sections of the Bankruptcy Act. Old rule 306(d), for example, restated section 57h, which dealt with the valuing of securities:

h. The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court.

11 U.S.C. § 93(h) [repealed]. In turn, old rule 306(d) provided:

(d) *Secured Claims.* If a secured creditor files a proof of claim, the value of the security interest held by him as collateral for his claim shall be determined by the court, and the claim shall be allowed to the

---

**29.** Does the reference in section 57c to claim allowance mean that where a claim was to be filed was a matter of substance?

extent it is enforceable for any excess of the claim over such value.

BANKR.R.P. 306(d) [repealed]. Similarly, section 57n, *see supra,* note 28, was restated in part by old rule 302(e), *see supra,* note 27.

Other provisions of section 57 remained unaffected by the old rules. Subsection "j," for example, provided that debts to governmental units for penalties or forfeiture were disallowed except to the extent of the actual pecuniary loss. No rule purported to concomitantly disallow such claims, or indeed to allow them.

The old rules also varied depending upon to which chapter(s) they corresponded. The afore-quoted provisions applied in "straight bankruptcy" or liquidations cases, and depending on the applicable rules for one of the reorganization chapters. They may or may not have applied in those cases. For example, in chapter XIII (the predecessor to chapter 13) cases, rule 13–302(e)(2) eliminated the last sentence of section 57n and old rule 302(e)(5), *see supra* note 7, which provided for late filing of claims to permit payment of dividends from any surplus that remained in the estate after administration of the case as inconsistent with the rehabilitative purpose of chapter XIII. Bankr.R.P. 13–302 [repealed] and Advisory Committee Note, *reprinted in* 15 King & Countryman COLLIER ON BANKRUPTCY ¶ 13–302.01 at 13–302–7 (14th ed. 1977). Old rule 13–309(c) provided that any surplus in a chapter XIII case would be returned to the debtor. The omission of the surplus provision in chapter XIII cases was challenged as beyond the scope of the Rules Enabling Act in *In re Colvin,* 5 B.R. 468 (Bankr.D.Me.1980). The court rejected the notion that the rule exceeded the authority under the Rules Enabling Act, and found that the omission was indeed consistent with the provisions of and rehabilitative nature of chapter XIII. Concluded the court, "Rule 13–302(e)(2) properly recognizes that distinction [straight bankruptcy and rehabilitative cases] and eliminates that provision." *Id.* at 470.

Too, in chapter XIII cases, secured creditors were required to file their claims no later than the first meeting of creditors. BANKR.R.P. 13–302(e)(1) [repealed]. If a secured creditor failed to file its claim on or before that date, its claim would be treated as unsecured. It was recognized that the rule was intended to facilitate the orderly and timely administration of chapter XIII cases. *See, e.g., NAACP Credit Union v. Louie,* 7 B.R. 145, 147 (E.D.Mich.1980). After the Bankruptcy Code was enacted there was some conflict of opinion whether old rule 13–302(e)(1) was inconsistent with the Bankruptcy Code, and thus inapplicable. *See In re Hines,* 20 B.R. 44, 47 (Bankr.S.D.Ohio 1982) (citing cases). In *Hines,* the court found the provision consistent with the Bankruptcy Code:

> The Court believes that it is significant to draw a distinction between the procedural and substantive effects of Bankruptcy Rule 13–302(e)(1). Regardless whether a secured creditor chooses to file a proof of claim, 11 U.S.C. Chapter 13 contemplates the retention of liens by secured parties. [citation omitted]. The effect of Bankruptcy Rule 13–302(e)(1) should be enforced procedurely [sic]. To be specific, Bankruptcy Rule 13–302(e)(1) should not be interpreted to invalidate liens, but merely as it establishes the procedure for the efficient administration of the proceedings by permitting the treatment of secured creditors who do not file or who file late as unsecured only for purposes of distribution under 11 U.S.C. Chapter 13.

*Id.* at 48.

As the foregoing demonstrates, section 57n contained a variety of provisions, a few of which were unquestionably substantive, several of which were unquestionably procedural, and many of which were in that uncertain area between substance and procedure. Within what category does section 57n's proscription against late filed claims lie? This court believes that the history of the relevant provisions of both the Bankruptcy Act and the old rules strongly suggests that section 57n was primarily procedural, prescribing a condition precedent to allowance of a claim. Both the traditional teachings from the substance/procedure debate as well as the legislative history of the Bankruptcy Code support this conclusion.

While the Rules Enabling Act proscribes interference with "substantive" law, as with all such proscriptions it provides us with a

moving target. In *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 5, 107 S.Ct. 967, 970, 94 L.Ed.2d 1 (1987), the Supreme Court held that "Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules." In other words, "Rules regulating matters 'which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either,' ... satisfy [the] constitutional standard." *Id.* (quoting *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965).

As Justice Rutledge aptly observed, "[t]he words 'substantive' and 'procedural' or 'remedial' are not talismanic." *Guaranty Trust Co. v. York*, 326 U.S. 99, 115, 65 S.Ct. 1464, 1473, 89 L.Ed. 2079, 2090 (1944) (Rutledge, J., dissenting). "The test of whether a rule exceeds the congressional mandate embodied in the enabling act is 'whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Bonner v. Adams (In re*

*Adams)*, 734 F.2d 1094, 1101 (5th Cir.1984) (quoting *Sibbach v. Wilson*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941)). Eschewed has been an 'outcome-determinative' test for making this distinction, "for any rule, no matter how clearly 'procedural' can affect the outcome of a case." *Id.* at 1102 (citation omitted).[30]

No doubt the time limitations imposed under the Bankruptcy Act and the old rules affected the outcome where creditors unfortunately filed late claims. But the overwhelming effect of the provision was to regulate and enforce the right and duties recognized in the substantive laws. The time limitation was a prerequisite to allowance of a claim. If a creditor did not file a claim, she did not participate in distributions, unless there was a surplus. In fact, that a creditor who filed a late claim could nonetheless receive a dividend in the event of surplus funds supports the conclusion the reference in section 57n that a late claims "*shall not be allowed*" did not mean that the late filed claim was *disallowed.*

The legislative history of the Bankruptcy Code supports this conclusion as well. That Congress perceived the time limitation of the

---

**30.** Applications of this test demonstrate the tenor of the courts' decisions. In *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 445, 66 S.Ct. 242, 246, 90 L.Ed. 185, 192 (1945), a party argued that Rule 4(f) of the Federal Rules of Civil Procedure, which provides that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the estate in which the district court is held," was not in harmony with the venue and jurisdictional restrictions on district courts. The defendant, a Delaware Corporation, did business in the Southern District of Mississippi, and suit was filed in the Northern District of Mississippi. Defendant argued that it could not be brought before the court in the Northern District and subjected to its judgment. Argued the defendant, Rule 4(f) enlarged the venue of the district court in contravention of the Rules Enabling Act. The Court rejected the defendant's arguments in recognition that "rules of practice and procedure may and often do affect the rights of litigants." *Id.* at 445, 66 S.Ct. at 246. Thus, concluded the Court:

The fact that the application of Rule 4(f) will operate to subject petitioner's rights to adjudication by the district court for the northern district of Mississippi will undoubtedly affect those rights. But it does not operate to abridge, enlarge or modify the rules of decision

by which that court will adjudicate its rights. It relates merely to 'the manner and the means by which a right to recover ... is enforced.' [citation omitted.]
*Id.*
Characterization of statutes of limitations too have been considered by the Supreme Court, although in the context of an *Erie* issue. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1944). In *York* the Court was presented with the question whether a federal court adjudicating state created rights would apply the limitations of the forum state or the limitations of the state from whence the action was derived. In that context the Court framed the question as follows:
[T]he question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the state, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of litigation for a federal court to disregard a law of a state that would be controlling in an action upon the same claim by the same parties in a state court?
*Id.* at 109, 65 S.Ct. at 1470.

Bankruptcy Act and old rules as procedural devises that aided to the efficient management of the bankruptcy system could not be more clear.

Section 502 provides in pertinent part:

**Allowance of Claims of Interests.**

(a) A claim or interest, *proof of which is filed under section 501 of this title*, is deemed allowed, unless a party in interest, ..., objects.

(b) Except as provided in subsections (e)(2), (f), (g)(h) and (i) of this section [not applicable here], if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim ... except [to the extent that the claim falls within in one of the eight following grounds for disallowance].

11 U.S.C. § 502 (emphasis added). Section 502(b) of the Bankruptcy Code provides, in a manner of speaking, the rules of decision on *allowance* of claims in a case under title 11. Our rule of decision requires that a claim must be filed under section 501. That section provides in turn:

**Filing of proofs of claim or interests.**

(a) A creditor ... may file a proof of claim....

(b) If a creditor does not *timely* file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not *timely* file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

11 U.S.C. § 501 (emphasis added).

As neither provision itself directs when, where or upon whom the claim should be filed or served—there is no embodiment of the term *timely* repeated in section 501. Those matters, per the design of Congress, are taken up in procedural rules. *See* FED. R.BANKR.P. 3002 (proofs of claim in cases under chapters 7 and 13); 3004 (proofs of claims filed by the debtor or trustee); 3003 (proofs of claim in cases under chapter 9 and 11); 5005 (place for filings generally); 2002 (service). Rule 3002(c) provides that in a chapter 13 (or chapter 7) case "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a)...." FED. R.BANKR.P. 3002(c).

Stowed upon creditors by section 501 of the Bankruptcy Code is the right to file a claim if they so choose. A proof of a claim *filed under section 501* gives rise to a *prima facie* case that the claim is allowed under section 502, unless objection is made thereunder. In the words of the legislative history, "unless a claim is listed in a chapter 9 or chapter 11 case and allowed as a result of the list, a proof of claim will be *a prerequisite to allowance for unsecured claims*, including priority claims and the unsecured portion of a claim asserted by the holder of a lien." S.Rep. 989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, p. 5847.

That Congress anticipated certain procedural matters would be taken up in the bankruptcy rules is also clear from the legislative history:

The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed. The rules governing time limits for filing proofs of claim will continue to apply....

*Id.* At a later point in the legislative history, in the context of the discussion of section 501(d), that Congress intended timeliness of filing to have the effect of a strict limitations period is again made clear:

The separation of this provision from the other claim-filing provisions in this section is intended to indicate that claim of the kind specified, which do not become fixed or do not arise until after the commencement of the case, must be treated differently for filing purposes *such as the bar date for filing claims. The rules will provide for later-filing of claims of these kinds.*

*Id.* (emphasis added).

The time limitation of Rule 3002(c), which fulfills section 501, is not, as *Hausladen* and its progeny presume, a ground for *disallowance*. It is rather, as the legislative history states, a prerequisite to allowance. This dis-

tinction is not merely a matter of semantics, it is a distinction with a difference, a difference that is procedural rather than substantive.[31]

The issue thus framed is not one of *allowance* versus *disallowance* of a claim that is not timely filed. We never reach that issue. We do not then affect the rule of decision that governs adjudication of the creditor's claim—rather we merely affect the means and manner through which the claim may be adjudicated. Indeed, when a claim is filed late a creditor's ability to participate in distributions is no less affected than if the claim were disallowed upon one of the grounds enumerated in section 502(b), but that "interference" is merely incident to the substantive rights—part of the "judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *In re Adams*, 734 F.2d at 1101 (citation omitted). Rule 3002(c) does as it was intended; it provides structure and manageability to substantive provisions that would otherwise simply flap in the wind. Congressional intent could not be more clear in this area—continued in procedural rules would be provisions that, *inter alia*, make for a more workable and efficient administration of bankruptcy cases.[32]

Once it is determined that Rule 3002(c) administers and enforces section 501 and 502 of the Bankruptcy Code, the other grounds for support relied upon in *Hausladen* and its progeny disappear. In *Gullatt* the court found (further) support for its conclusion that Rule 3002(c) does not effect a bar date in sections 506(d), 726 and 1325(a)(4) of the

Bankruptcy Code. *In re Gullatt*, 164 B.R. at 281.

Section 506(d) provides:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d). Judge Lundin concluded that if disallowance is the consequence of an untimely filed claim "then untimely filing is omitted as an exception to the voiding powers of § 506(d), and a lien holder with no filed proof of claim [would be] better off than a lien holder with a tardy proof of claim." *In re Gullatt*, 164 B.R. at 281.

Under this court's conclusion that timely filing is a prerequisite to allowance—not a ground for disallowance—a lien holder with a tardily filed claim is in the same position as the lien holder that filed no claim. As discussed above, the late filed claim is not a "claim filed under section 501"—an express exception to lien avoidance under section 506(d). This result also extinguishes any possibility that a debtor, a trustee or a co-debtor could manipulate the lien avoidance statute by filing a "late" claim on behalf of the lien holder, objecting to the claim on the ground it was late filed, and then seek avoidance of the lien under section 506(d). No doubt section 506(d) was not intended for such use, and this court's construction Rule

---

**31.** Other courts have concluded similarly. *See, e.g., In re Zimmerman*, 156 B.R. 192 (Bankr. W.D.Mich.1993). The *Zimmerman* court analogizes the time limitation for filing proofs of claims to the answer period in civil litigation prescribed by the Federal Rules of Civil Procedure. *Id.* at 196 & 198. "[F]ailure to timely file an answer in a civil case may result in a default. While the default is procedurally mandated, the outcome of a default judgment against the defendant is most definitely substantive." *Id.* at 196. "[L]ike an answer to a complaint, whether a claim is eligible to be considered under § 502 at all depends upon its proper and timely filing." *Id.* at 198.

**32.** Indeed, it was foreseen that no less than 322 such matters that concerned, among other things, "giving notice; setting time limitations; designating places to file documents, specifying the form, content, and number of documents; indicating the method of conducting trials or hearings, including rules of evidence; regulating conduct of parties appearing before the court; organizing court dockets and calendars; issuing orders, process, or judgment; processing appeals; and liquidating property of the estate ...," H.R. 595, 95th Cong., 1 Sess. (1977), would be covered by the rules. Indeed, many of these matter were previously the subject of the Bankruptcy Act as superseded, or not, by the old rules.

3002 and sections 501 and 502 assures that it will not be so used in the case of late filed claims, be they filed by a debtor, trustee, codebtor, or the creditor itself.

The timeliness-as-prerequisite-theory is consistent also with the treatment of late filed claims in chapter 7 cases. *Hausladen* found strength for its position in section 726 of the Bankruptcy Code, that prioritizes distributions to unsecured creditors in cases under chapter 7. 11 U.S.C. § 726. Among the priorities, are provisions for untimely filed claims. 11 U.S.C. § 726(a)(2)(C) & (a)(3). Effectively, the claims of creditors with notice of the bankruptcy who nevertheless fail to file a proof of claim within the prescribed time are subordinated to claims, proof of which has been timely filed, save for claims for fines, penalties exemplary damages and the like. Reasoned the *Hausladen* court, if untimely filed claims are entitled to distribution in chapter 7 then untimeliness can not be grounds to *disallow* the claim.

As set forth above, untimeliness does not effect *disallowance* of a claim, for, as *Hausladen* and *Gullatt* observed, a claim may be affirmatively disallowed only on the eight grounds set forth in section 502 of the Bankruptcy Code. Rather, untimely claims are held in suspense. For example, an untimely claim that is not entitled to distribution in a chapter 13 case because it was not a claim filed under section 501, may nevertheless be entitled to share in any distributions made under chapter 7 should the case be converted. This is not because section 726 prescribes distributions on untimely claims; the creditor's claim will not be subordinated. Rather, the result is driven by Rule 1019, which provides for a new filing period upon conversion. This is possible because a late filed claim is not stricken or otherwise substantively affected, it is merely held in abeyance.[33] If the creditor again fails to timely

file its claim in the chapter 7 case, in accordance with section 726 that claim is merely subordinate to timely filed claims.

This treatment is consistent also with pre-Code practice. While section 57n of the Bankruptcy Act and old rule 302 purportedly "disallowed" late filed claims, section 57n also provided that in a case of straight bankruptcy (liquidation or our present day chapter 7):

> When in any case all claims which have been duly allowed have been paid in full, claims not filed within the time hereinabove prescribed may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in such case.

11 U.S.C. § 93(n) [repealed]. Thus, too, under the Bankruptcy Act and the old rules of procedure, a late filed claim was not *disallowed* in any substantive sense, but rather was merely suspended. In short, by reading Rule 3002(c) as establishing a condition precedent to allowance under section 502 as a properly filed claim, we avoid an interpretation that is inconsistent or in conflict with section 726.

The more interesting and expedientially more challenging issue arises because of the importation of section 726 into chapter 13 through the best interest of creditors test of section 1325(a)(4). *See In re Gullatt,* 164 B.R. at 282. For a chapter 13 plan to be confirmed "the value . . . of the property to be distributed under the plan on account of each allowed unsecured claim [must be] not less than the amount that would be paid on such claims if the estate of the debtor were liquidated under chapter 7. . . ." 11 U.S.C. § 1325(a)(4). This means that untimely filed claims that would be otherwise allowed in a chapter 7 case must receive the same distri-

---

**33.** What if a chapter 13 case is converted to a case under chapter 11? In a chapter 11 case a late claim may participate in distributions under the plan if the creditor can show that the tardy filing was the result of *excusable neglect. See* Fed.R.Bankr P. 9006(b). Since the claim in the chapter 13 case as suspended pending some resolution of the case—be that a fully performed plan, dismissal or conversion—the claim must be evaluated under the chapter 11 test for late

claims under Rule 9006. Alternatively, if the case is dismissed the creditor may pursue it remedies under state law. Not only are all parties returned to their prebankruptcy status, *see* 11 U.S.C. § 349, neither *res judicata* nor collateral estoppel would bar the creditor from pursuit of its claim merely because the untimely claim was not entitled to distribution in the chapter 13 case, *i.e.*, the claim was never disallowed.

bution under a chapter 13 plan as they would receive if the case were one under chapter 7.

In *Gullatt*, Judge Lundin recognized the potential conflict with the best interest test if late filed claims are not entitled to participate in the distributions under a chapter 13 plan, and concluded:

> Sections 726(a) and 1325(a)(4) are fully accommodated if tardily-filed claims are allowable, subject to appropriate provisions in a confirmed plan. If late-filed claim holders would not be entitled to distributions in a Chapter 7 case under § 726(a), then the test in § 1325(a)(4) would not prohibit confirmation of a Chapter 13 plan that provided no payment for late-filed claims. If tardily-filed claim holders would be entitled to distributions in a Chapter 7 case, then § 1325(a)(4) prohibits confirmation of any plan that failed to protect that right.

*Id.* (footnote omitted). While this result appears sound upon first consideration, further reflection reveals that as a solution it is unworkable. How would the court apply this test? Not only do we not know at the time of confirmation if in fact there will be a class of such creditors, but how is the court to assess whether claims that may (or may not) be filed would receive a distribution under chapter 7, let alone the dollar amount of that hypothetical dividend. How can a debtor protect the rights of those "unknown" creditors, and how can the debtor make such representations in good faith? [34] *See* 11 U.S.C. § 1325(a)(3) (plan must be offered in good faith). Who is to speak up for those faceless creditors—the chapter 13 trustee, the court, the United States Trustee, the debtor?

In addition to the best interest of creditors test, section 1325(a) also imposes upon chapter 13 plans a feasibility requirement—a determination that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). If late filed claims must be provided for under the plan, how is the court ever meaningfully to assess feasibility? How does the court account for myriad unknown variables when it evaluates the debtor's ability to perform under the plan? Quite simply, it can not, and strict imposition of this standard would make no plan confirmable.

Judge Lundin criticizes those cases that dismiss the reference in section 726(a) to "allowed untimely filed claims" as an irrelevant peculiarity of chapter 7. *Id.* at 281 n. 6. And, indeed, rightly so. Courts cannot close their eyes on issues merely because they are difficult or unpleasant. Moreover, policy and equity cannot always substitute for more solid means of analysis in such cases, even though there may be no tidy answer.

■ As demonstrated above, the straight forward application of section 726 priorities in chapter 13 makes confirmation all but impossible--an improbable result indeed, and certainly not what Congress intended chapter 13 debt restructurings achieve. It is a basic tenet of statutory construction that where literal application of words of a statute would lead to futile or absurd results, the court may deter from literal textualism. *See, e.g., Mohasco Corp. v. Silver*, 447 U.S. 807, 818, 100 S.Ct. 2486, 2493, 65 L.Ed.2d 532 (1980); *United States v. Brown*, 333 U.S. 18, 27, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences."). Indeed, "even when the plain meaning [does] not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislature as a whole' [the Supreme Court] has followed [the] purpose, rather than the literal words." *United States v. American Trucking Assocs.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Courts are not to forge ahead under the plain meaning dogma, in "[b]lind nullification of Congressional intent." *United States v. Brown*, 333 U.S. 18, 27, 68 S.Ct. 376, 380, 92 L.Ed. 442

---

**34.** One might argue that such questions are academic in most chapter 13 cases where the debtors will know—sometimes too well—who their creditors are and exactly how much they are owed. Currently, before Congress is a bill that, among other things, proposes to significantly increase chapter 13 debt limits. Passage of that bill will open the chapter 13 door to a new strata of debtors. Those newly eligible debtors will undoubtedly change the face of chapter 13 in ways too numerous to imagine.

(1948). It is into this realm of statutory construction that we must now venture.

■ As portrayed above, importation of the chapter 7 priority scheme as it relates to tardily filed claims leads to an unmanageable system in which no plan may be confirmed because of the existence of myriad variables. The very structure of chapter 13 is to promote individual debt restructurings and repayment, at the least (external) cost to the debtors, the creditors, the court, and the system. Assuming the court could fix those variables, the very process would be costly, in time as well as dollars.[35]

The section's own internal failings render its strict application in chapter 13 even less compelled. Section 726 provides in part:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief of the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

11 U.S.C. § 726(a).

Facing the section head on, the Second Circuit recently addressed several of its short falls. *United States v. Vecchio (In re Vecchio)*, 20 F.3d 555 (2d Cir.1994). In *Vecchio*, a chapter 7 case, the United States appealed lower court decisions that held that tardily filed priority claims are relegated to third priority if the United States had notice of the case. The Second Circuit reversed the lower courts, finding their position at odds with the "plain language of the statute." First, the Second Circuit noted that Congress certainly knew how to distinguish between timely and tardily claims, and indeed had done so in the very section under scrutiny. *Id.* at 557. Not having so distinguished between timely and tardily filed priority claims, the Second Circuit ultimately concluded that such distinction must not have been intended. The lower courts' rationale led to an incongruous result, as placement of late filed priority claims in subsection (a)(3) would require the same logic apply to late filed penalty and fine claims which generally receive only a fourth priority. Thus, a tardily filed penalty claim would receive better treatment than a timely filed penalty claim— a patently absurd result. *Id.* Continued the court, to accept the position of the trustee would lead to "another anomalous result

---

**35.** Plans would generally have to be longer; reserves would have to be set up to provide for potential late claims, trustees would accordingly have to administer those reserves; insufficient reserves would open the door to suits against the trustee and disgorgement orders directed at those creditors who timely filed claims; if disgorgement orders were not complied with freely, the trustee would have to take other action; trustees' bonds would undoubtedly become more costly; and indeed, trustees might be hard to come by.

where priority claims are filed late because the priority creditors lacked notice of the bankruptcy." *Id.* Because priority claims are expressly excluded from second priority, tardily filed priority claims would automatically be relegated to third priority, while similarly situated general unsecured creditors would retain their second priority. This result too is absurd, concluded the court. Whether or not one accepts the Second Circuit's result (for that issue is not before the court), what the case clearly demonstrates is that section 726 is not a model of statutory draftsmanship.[36]

Indeed, there are other *glitches* in the statute. It is recognized in section 726 that claims will sometimes be filed too late to participate in the regular distribution to creditors. 11 U.S.C. § 726(a)(2)(C) (tardily filed unsecured claims are not subordinate to timely filed claims if the claimholder did not have notice of the case in time to filed a claim and filed in time to permit payment of such claim). Unfortunately, that recognition does not go far enough to protect trustees and creditors who rely on distributions made on timely filed claims because there is no similar proviso with respect to priority claims, tardily filed claims of creditors with notice, or penalty claimants.[37] Thus, presumably, so long as a case is open any creditor who received a distribution from the estate risks being required to disgorge payments received, and the trustee stands in fear of being sued for improper distribution. And what is to prevent the holder of a late filed claim from having the case reopened to accomplish the same result? Those certainly are not results consistent with an orderly and cost efficient distribution to creditors. In the chapter 13 context the effect is even more severe as late claims may foil a plan years into a debtor's performance under the terms of the plan, with no possibility for modifica-

tion. *See, e.g.,* 11 U.S.C. § 1322(c) (maximum term of a chapter 13 plan is five years).

As the Supreme Court reminded us in *Timbers,* "[s]tatutory construction ... is a holistic endeavor."[38] This court recently grappled with the statutory quagmire that surrounds payment of standing trustee fees in chapter 13 and chapter 12 cases. *In re Turner,* 168 B.R. 882, 891–92 (Bankr. W.D.Tex.1994). Of the plain meaning rule, the court commented:

> It would be a mistake to read more into the language choices than that—and an even greater mistake to apply a hypertechnical, 'plain meaning' grammarian's ruler that ignores context. As much as so many decisions of late pantingly recite the primacy of the 'plain meaning' rule of statutory construction when construing provisions of the Bankruptcy Code, our first duty as judicial officers is still to seek after congressional intent. When context is ignored, and we restrict ourselves to parsing parts of speech, we risk learning a lot about leaves and twigs but learning nothing about the forest. More, we risk elevating a meaning that is 'plain' only to a given myopic judicial officer as the 'expression of congressional intent,' even though context plainly indicates that Congress intended no such thing.

*Id.*

Here too, holding steady to the mantra of plain meaning produces if not an absurd result, at least a result that is unreasonable and plainly at variance with the policy and purpose of the legislation as a whole. Strict adherence to chapter 7 priorities for tardily filed claims leads to an unmanageable chapter 13 program. A plan may not be administered until all claims against the estate have been filed. If claims may be filed and entitled to distribution at any time during the

---

**36.** The trustee in *Vecchio,* relying on Rule 3002(c), also argued that in order for a claim to be an "allowed" claim, it must be timely filed. *Id.* at 559. Following the *Hausladen* approach, the Second Circuit found the Rule to contravene the statute to the extent it purports to disallow tardily filed claims.

**37.** The participation proviso in section (a)(2)(C) implicitly reflects the fact that the claims of cred-

itors without notice will not be discharged. 11 U.S.C. 523(c). Hence, their sole hopes of payment rely not on distributions from the chapter 7 estate.

**38.** *United States Savs. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

chapter 13 process, how is a trustee to administer her cases. A plan may not even be confirmed unless the court can find that it is feasible, that the debtor will be able to perform under the plan. If claims may be filed and entitled to distribution at any time during the chapter 13 process, how is the court to confirm plans, and how is a trustee, without fear of being sued, to recommend confirmation? In answering these inquiries their absurdity is self evident. That late claims are not entitled to distributions in chapter 13 cases and is consistent with the policies of finality, closure and orderly and cost efficient reorganization of individuals under chapter 13; it is consistent with pre-Code practice; and it is consistent with Congressional intent. This court declines to forge ahead under the banner of plain meaning in "blind nullification of congressional intent."

### Conclusion

For the foregoing reasons, the IRS's motion for leave to file a claim after the bar date is denied on the ground that the claim is not an amendment to a timely filed claim and is filed subsequent to the deadline fixed for filing proofs of claim under Rule 3002(c).

So **ORDERED.**